PROTOSTY, C. J.
Joachim Bourgeois, the decedent, was born of slave parents, on a plantation in this state, in 1841. He died in this city in 1921.
His mother, Adelaide Paquet, was born in 1820. She had two brothers — Jean Baptiste and Jean Julien Toto Paquet. At what dates these brothers were born is not shown. The children of these brothers are claiming the estate as against the state, to whom it has been assigned, in the absence of legal heirs, by the public administrator in the final account of his administration of the succession; The said claimants, cousins of the decedent, are Marie Emma Paquet, born in 1869, daughter of Jean Baptiste Paquet, and Jean Julien Paquet, born in 1853, son of Jean Julien Toto Paquet.
Their contention is that their grandparents were married slave fashion, and that the parents of the decedent were married in like manner.
These grandparents were Jean Paquet and Madeleine.
All these slaves belonged to the grandparents and parents of Mrs. Jules Chopin, who was the main witness in the case.
She testified that she herself was 77 years old; that she does not know whether Madeleine was ever “married in church,” but that Madeleine “lived with Jean Paquet”; that they “lived in a cabin in the yard” ; that Adelaide, the mother of the decedent, was her (witness’s) nurse, or mammy, and lived with her in New Orleans after the war; that she knows that Adelaide had a son (the decedent) by a man named Joachim Bourgeois, but that she does not know whether they were ever married or ever lived together; that sh4 never saw this man.
[1] This is the sum of the evidence on the question of marriage vel non. Certain affidavits were sought to be introduced, but, upon objection, were ruled out. And properly, since the testimony of witnesses must be taken contradictorily in court, and cannot be substituted by ex parte affidavits. These affidavits would, however, have added nothing to the foregoing.
[2] Said evidence shows at best that the parents of the claimants were the natural uncles of the decedent, and the claimants his natural cousins, and therefore fails to make out a case for the claimants, since, under our law, natural cousins do not inherit from their natural cousins. Indeed, even natural uncles do not inherit from their natural nephews. Succession of Fletcher, 11 La. Ann. 59 ; Montégut v. Bacas, 42 La. Ann. 158, 7 South. 449 ; Succession of Miller, 27 La. Ann. 574.
[3] Another opposition to the account of the administrator is that of E. M. Stafford Esq., attorney at law, who claims of the estate a lump sum of $1,000, for professional services which he alleges he rendered to the decedent at different times. The claim being-for a lump sum exceeding $500, the case comes under article 2277, O. O., which provides that claims “above $500 in value must be'proved at least by one credible witness, and other corroborative circumstances.” Mr. Stafford details in his testimony the services rendered, and says that they were worth $1,-000. Tlie only corroborating evidence is the testimony of a clerk in his office, who says 'that he frequently saw the decedent in consultation with Mr. Stafford in the latter’s office.
Without detailing the services in question, we will say that the charge appears to us to be largely excessive, and that the said corroborating testimony is insufficient.
The trial court rejected the opposition of Mr. Stafford, as well as that of the said claimants of the' estate.
*583 It is ordered, adjudged, and decreed that the judgment appealed from be. affirmed, and that the said E. M. Stafford and the said two claimants pay the costs of this appeal in solido.
Rehearing refused by the WHOLE COURT.