SIMON, Justice.
This is an appeal from a judgment of the District Court, Parish of Orleans, adjudging appellant, Paul Baragona, an incestuous bastard and as such incapable of inheriting the estate of his natural mother, Ethel Dora Baragona.
Ethel Dora Baragona was the sole heir and only child of her parents, Martha Cervini, wife of and Paul Baragona. Paul Baragona died intestate in the year 1926. *1057 Ethel Dora Baragona, a feme sole, died intestate on September 1, 1944, survived by her mother, the said Martha Cervini Baragona, and one child, Paul Baragona, who was born out of wedlock on July 15, 1931, and who was on January 20, 1937, adjudged by the Juvenile Court for the Parish of Orleans to be feeble-minded and committed to the State Colony and Training School at Pineville, Louisiana.
On February 13, 1952, Martha Cervini Baragona caused the successions of her deceased husband and daughter to be opened, entitled “Successions of Paul Baragona and Ethel Dora Baragona”, Docket No. 311,741, Civil District Court, Parish of Orleans. In her petition the said Martha. Cervini Baragona alleged that she was the surviving widow of the de cujus Paul Baragona; that during their marriage one child, Ethel Dora Baragona, was born on October 31, 1907, who was at birth a moron or idiot; that the said Ethel Dora Baragona died on September 1, 1944, intestate, leaving as her sole and only issue an incestuous bastard who was also born an idiot or moron and who was at the tinie of this proceeding confined in a state institution for the insane. She alleged that she was the widow in community of the dececedent, Paul Baragona, and the sole and only heir of the second decedent, Ethel Dora Baragona, and as such entitled to all the property belonging to the community and forming the whole of their successions.
On May 10, 1952, the said Martha. Cervini Baragona died testate, naming Charles K. Harris universal legatee under a nuncupative will by public act executed on March 10, 1951. This will was duly filed, probated, and registered in the proceeding entitled “Succession of Mrs. Martha Cervini, Widow of Paul Baragona,” No. 314,-040 of the Docket of the Civil District Court, Parish of Orleans. Subsequently Charles K. Harris filed a petition in the proceeding entitled “Successions of Paul Baragona and Ethel Dora Baragona” and therein obtained a judgment recognizing the estate of Martha Cervini as full owner and placing it in possession of all the property comprising said joint successions.
Thereafter Charles K. Harris, as universal legatee, obtained a judgment in the Succession of Martha Cervini, recognizing him as owner and placing him in possession of all the effects of said succession. Harris! demand upon various homesteads in this city to transfer certain stocks forming part of said succession was refused. Thereupon, he brought a mandamus proceeding against said associations to compel .the transfers. Pending hearing thereof, Harris filed suit against Paul Baragona to establish contradictorily his status as that of an incestuous bastard enjoying no right of inheritance. In compliance with law, a curator ad hoc was appointed to represent the said defendant.
After the trial of that issue, judgment was rendered in favor of Charles K. Har *1059 ris, decreeing the defendant, Paul Baragona, the child of Ethel Dora Baragona, to be an incestuous bastard. The curator ad hoc perfected an appeal from said judgment to this court, and while said appeal was pending, the appellant, Paul Baragona, died on May 31, 1955.
Thereupon, by order of this court on October 11, 1955, the Public Administrator for the Parish of Orleans, having qualified as the administrator of the “Succession of Paul Baragona”, No. 339,301 of the Docket of the Civil District Court, was admitted as a party litigant in the instant suit. On the same day, the attorney who had served as curator ad hoc was entered as attorney for the absent heirs of the defendant-appellant herein, Paul Baragona.
This appeal presents one issue, the correctness of the trial court’s judgment decreeing Paul Baragona to be an incestuous bastard and therefore prohibited by our law[1] from inheriting as the sole heir of his mother’s estate.
The record discloses the undisputed pertinent facts to be as follows: Ethel Dora Baragona was the only child born of the marriage between Martha Cervini and Paul Baragona. She survived her deceased father, ánd, as his sole and only heir, was entitled to inherit his entire estate of a one-half interest in all community effects. Approximately five years following his death, she gave birth to a child out of wedlock, giving said child her deceased father’s name, Paul Baragona. Ethel Dora Baragona was epileptic and notoriously imbecilic from birth, and her mental development never exceeded that of a child of seven years. However, she was never committed to an institution. She was never married. The child she gave birth to was tragically and unfortunately more afflicted than she, born an idiot whose mental processes did not develop to that of a child of three years. Because of said child’s total mental infirmities he was committed to a state institution when he was about five years old.
Notwithstanding that the heritable rights of said child flow solely from the mother’s estate and not that of the reputed father’s, the paternity of said child is vigorously disputed.
Under Chapter 3, section 2 of our LSA-Civil Code, dealing with illegitimate children, Article 209 prescribes the methods of proving paternity, which are as follows:
“1. By all kinds of private writings, in which the father may have acknowledged the bastard as his child, or may have called him so;
“2. When the father, either in public or in private, has acknowledged him as his child, or has called him so in conversation, or has caused him to be educated as such;
*1061 “3. When the mother of the child was known as living in a state of concubinage with the father, and resided as such in his house at the time when the child was conceived.”
The record is barren of proof of any acknowledgment of paternity by the reputed father so as to make applicable the provisions of subdivisions 1 and 2 of the codal article. Hence, any proof of paternity would necessarily and in this instance exclusively fall within the method prescribed by subdivision 3.
In an effort so to do, Charles K. Harris produced disinterested witnesses who were neighbors and who testified to their beliefs, undoubtedly sincere, that the father of Ethel’s child was Frank Baragona, her paternal uncle. The testimony of these witnesses establishes that Mrs. Martha Cervini Baragona owned a two-story house in which she rented light-housekeeping apartments. She maintained living quarters for herself and her daughter in the first floor front apartment; Frank Baragona occupied a rear room on the first floor for a period of about three or four months and enjoyed the status of a member of the family. As such, he was on several occasions entrusted with attending and supervising Ethel Dora Baragona and was often permitted to take her on long walks along the city streets. There is testimony to the effect that Ethel childishly referred to Frank Baragona as her husband.
Though it is amply established that Mrs. Cervini Baragona closely supervised and tenderly watched the conduct of her mentally and physically infirm young daughter and provided to the best of her ability safety against injury which often occurs during the throes of epileptic attacks, that despite these guarded efforts Ethel often appeared out of doors totally unclothed.
When her unexpected pregnancy became the subject of neighborhood gossip and consternation, the accusing finger was pointed at the uncle, Frank Baragona. Over objection of counsel that the evidence was hearsay, two of the witnesses testified that Frank Baragona admitted ravishing the imbecilic girl, one of them testifying to having personally seen Ethel and Frank in a room unclothed. She further testified that she reprimanded Frank for such depravity; and that on the same day, he left the home. Since that date his whereabouts have been unknown.
Other evidence in the record consists of certified copies of birth and baptismal certificates, neither of which contained the name of the father of the said child. The space reserved for the name of the father was left blank on the birth certificate and marked “unknown” on the baptismal certificate.
We attach no weight whatsoever to the testamentary declaration by the child’s grandmother declaring said child to be an incestuous bastard. Such a declaration is *1063 at the most an ex parte statement of a deceased person and does not constitute legally admissible evidence. In the case of Succession of Bourgeois, 151 La. 580, 92 So. 122, we held that the testimony of witnesses must be taken contradictorily in court, and ex parte affidavits cannot be substituted therefor.
Admittedly, the testimony of the witnesses suggests reprehensible and lustful conduct on the part of Frank Baragona toward his niece. But we are not convinced such evidence is the nature and quality of proof required to declare a child born ■out of wedlock to be an incestuous bastard. To stigmatize the defendant-appellant herein (now deceased) with the disreputable and degrading status of incestuous bastard, hopelessly illegitimate, and to condemn a male member of a family with the scornful guilt of paternity of the child of his imbecilic niece demand explicit and positive proof and not suspicion and idle comments, even though the latter'be based upon what human experience might indicate to one of normal intelligence as being a probability.
 The language of subdivision 3 of Civil Code Article 209 clearly provides that paternity may be proved by evidence that the mother of the child was known as living in a state of concubinage with the father. The word “known” unquestionably denotes conduct which is open, free from concealment, without reserve, and which is practically avowed to a casual observer, contradistinguished from that which is secret, clandestine, disguised, thus avoiding any necessary odious inquiry. The language of the codal article, “living in a state of concubinage with the father, and resided [residing] as such * * * when the child was conceived”, imports something more -than the mere illicit commerce of a man and a woman or isolated instances of adulterous relationship. It further imports the maintenance of a status resembling marriage, the living together as husband and wife without benefit of ceremony. See, Succession of Jahraus, 114 La. 456, 38 So. 417; Gauff v. Johnson, 161 La. 975, 977, 109 So. 782; Texada v. Spence, 166 La. 1020, 118 So. 120, 62 A.L.R. 281; Succession of Lannes, 187 La. 17, 174 So. 94.
Applying, as we must, the ordinary as well as the legal sense of the language of this codal provision, we must perforce conclude that the evidence here presented, being mostly circumstantial evidence and ex- parte statements, does not warrant an affirmation of the judgment rendered by the trial court.
Accordingly, for the reasons assigned, the judgment of the district court is hereby reversed, annulled and set aside, and it is ordered that this cause be remanded for proper proceedings not inconsistent with the views herein expressed.

. LSA-C.C. Art. 920: “Bastard, adulterous or incestuous children shall not enjoy the right of inheriting the estates of their natural father or mother, in any of the eases above mentioned, the law allowing them nothing more than a mere alimony.”