(109 So. 782)

No. 27880.

GAUFF et al. v. JOHNSON et al.

(June 28, 1926. Rehearing Denied Oct. 5, 1926.)

*(Syllabus by Editorial Staff.)*

**1. Marriage ☞54.**

Marriage entered by both parties in reasonable and honest belief that they had right to do so *held* to produce all legal effects of valid marriage, in view of Civ. Code, arts. 117, 118, though former marriage of one had not been dissolved.

**2. Wills ☞17—Putative husband, married under honest but mistaken belief that putative wife's first marriage was dissolved, may take by will from her; "open concubinage;" "concubinage" (Civ. Code, art. 1481).**

Putative husband, married under honest but mistaken belief that putative wife's first marriage was dissolved, may take by will from her, since they were not living in "open concubinage," within Civ. Code, art. 1481, which is one that is without secret, reserve, or disguise; "concubinage" being act of cohabiting in sexual intercourse without authority of law.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Concubinage; Second Series, Open Concubinage.]

Appeal from Nineteenth Judicial District Court, Parish of East Baton Rouge; W. Carruth Jones, Judge.

Suit by Jennie Mack Gauff and others against Harry Johnson and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Benton & Benton, of Baton Rouge, for appellants.

Charles A. Holcombe and C. C. Bird, both of Baton Rouge, for appellees.

ROGERS, J. Appellants are the surviving sisters and a surviving niece of Lettie Mack, wife of Harry Johnson. They appeal from a judgment rejecting their demands to annul, in part, the clause in the will of the decedent, wherein she instituted her husband as her universal legatee. Their contention is that the universal legatee was living in open concubinage with the testatrix, and therefore, as to him, under Civ. Code, art. 1481, the will is invalid except for one-tenth of the movables belonging to the decedent's estate. The defense is that the appellee was not the paramour, but the putative husband in good faith, of the testatrix; and, as such, is entitled to receive his bequest under her will.

The testatrix married Harry Johnson in the year 1906. Prior to this she had been married to Jeff Gilmore. There is no record of the dissolution of this marriage, but the evidence overwhelmingly shows the decedent, Jeff Gilmore, and Harry Johnson believed the decedent had obtained a divorce from Gilmore before she married Johnson. On this point, the uncontradicted testimony is that all of said parties, who were ignorant negroes, were told by an attorney at law, now deceased, employed and paid for the purpose, that he had obtained the divorce, and that both Gilmore and his wife were free to remarry. Acting upon this information the testatrix married Johnson, and Gilmore, in

the year 1907, married Emma Jackson. Subsequent to her death he married Nellie Haslett, with whom he was living at the time he testified in the case.

After their marriage, the testatrix and Harry Johnson, the defendant, lived publicly and avowedly as husband and wife and were so regarded in the humble social sphere in which they moved and labored.

[1] We think they entered into the matrimonial relation in the reasonable and honest belief that they had the right to do so. This being the case, the marriage produced all the legal effects of a valid marriage. Civ. Code, arts. 117, 118; Succession of Buissiere, 41 La. 217, 5 So. 668; Jones v. Squire, 137 La. 883, 69 So. 733; Miller v. Wiggins, 149 La. 720, 90 So. 109.

[2] Civ. Code, art. 1481, upon which plaintiffs' action is founded, was interpreted by this court in the Succession of Jahraus, 114 La. 456, 38 So. 417. In the opinion, the history of the words, "open concubinage," as used in the article, is set forth, and their signification is determined from the authorities referred to. The court held that the open concubinage mentioned in the codal provision meant, "one that is plain and above board, without secret, reserve, or disguise, and not merely one that is notorious." The definitions quoted show that the concubine must not be confounded with the courtezan, or even with what is ordinarily called a mistress. She is the wife without a title. Concubinage is the act or practice of cohabiting in sexual intercourse without the authority of law or legal marriage.

In the present case, the universal legatee and the testatrix lived openly as husband and wife under the solemn sanction of what purported to be a legal marriage. Although this marriage was null, the good faith of the parties has given it the same effect as if it were not null. It has the ordinary effects of a valid marriage. One of these effects is,

necessarily, that the status of husband and wife existed from the date of the marriage until the death of the putative wife. Therefore, during said period, the parties were not living together in open concubinage, and there is no legal impediment to the right of the putative husband to take by will from his putative wife.

For the reasons assigned, the judgment appealed from is affirmed, at the cost of the appellants.