ROGERS, J.
 

 Certain heirs of Mrs. Mattie Texada Neal sued to annul her will so far as it constitutes Walter L. Spence her residuary legatee and appoints him testamentary executor. The court below rejected their demands, and they have appealed.
 

 The facts are as follows, viz.:
 

 Walter D. Spence and Mrs. Sarilla O. Spence were husband and wife and lived together as such at the matrimonial domicile in the parish of Natchitoches. During her temporary absence on a visit to relatives in the state of Illinois, upon the fraudulent allegation that her departure was permanent, and that prior thereto she had been guilty of misconduct, Walter L. Spence obtained a judgment of divorce in proceedings contradictorily had with a curator ad hoc appointed to represent his wife. This judgment was rendered in June, 1924, and the following month Walter L. Spence intermarried with Mrs. Mattie Texada Neal, the testatrix referred to herein. Upon her return, subsequently, to the parish of Natchitoches, Mrs. Sarilla O. Spence sued to annul the judgment of divorce, on the ground that she was not legally represented in the proceedings and that the decree had been fraudulently Obtained. The district court annulled the judgment of divorce on December 19, 1925, and its judgment was affirmed by this court on .October 5, 1926. A rehearing applied for by Walter L. Spence was denied on November 2, 1926. Spence v. Spence, 162 La. 4, 110 So. 68. Mrs. Mattie Texada Neal died on October 28, 1926, while the application for a rehearing was pending. On the day before her death, she executed her olographic will, in which she bequeathed “all I possess in this world to my. dear husband, W. L. Spence,” except a legacy of a certain sum of money to be divided equally between a sister and a so-called adopted child named Mae. She also declared that she “wanted” her sister and “my dear-husband, as I know him to be” to act as guardians of the child, Mae, and she appointed W. L. Spence executor without bond.
 

 
 *1023
 
 Prom the day the judgment annulling the decree of divorce was affirmed by this court, Mrs. Neal and the defendant, W. L. Spence did not live together as husband and wife.
 

 Plaintiffs seek to annul the testamentary disposition in favor of the defendant and his nomination as testamentary executor on three grounds, viz.:
 

 (1) That the testatrix was mistaken at the time she executed the will, in that she believed Walter L. Spence was her lawful husband, whereas, in fact, he was not.
 

 (2) That Walter L. Spence was,' in bad faith, living in open concubinage with the testatrix, and is therefore incapable of receiving a donation mortis causa of any portion of the immovable estate of the deceased.
 

 (3) That the legacy herein sought to be set aside was obtained -by fraud, misrepresentation, and overpersuasion.
 

 The first and third grounds of attack on the will are untenable. The good faith of the testatrix in entering into the marriage relation with W. L. Spence is conceded by the plaintiffs, and, in fact, is clearly established by the record. At the time her will was executed, she knew that the legality of her marriage was hanging in the balance, depending upon the final action of this court on the application for a rehearing in the suit for the annulment of the judgment of divorce from Mrs. Sarilla O. Spence. ' She had intervened in that suit, appealing to the mercy of the court. When she referred in her will to the defendant as “my dear husband, as I know him to be,” she was in no error whatever concerning his status. The expression as used in the will was merely the agonized cry of the testatrix proclaiming to the world her faith in the defendant and her belief in the validity of their marriage, irrespective of the decree of the courts. It is plain from the mere reading of the provisions of the will that the testatrix desired and intended to make the bequest under attack herein to W. L. Spence, and to no other person.
 

 The allegation that the legacy to the defendant was procured by “fraud, misrepresentation, and overpersuasion” means merely that the disposition was made through suggestion and captation, since it is not pretended that the testatrix was subjected to any undue influence at the moment she executed her will. Under our law no inquiry is permitted into the motives which may have influenced a testator in making his testamentary dispositions. Oiv. Code, art. 1492. The undue influence, such as intimidation and fraud necessary to procure the annulment of a testamentary disposition, must have been exercised upon the testator at the moment the will was executed, not before nor afterwards. Zerega v. Percival, 46 La. Ann. 590, 15 So. 476, and authorities cited. See, also, Succ. of McDermott, 136 La. 80, 66 So. 546, and Succ. of Schlumbrecht, 138 La. 173, 70 So. 76.
 

 The serious question presented for decision arises under the second ground of attack on the will of the de cujus. Oiv. Code,’ art. 1481, provides as follows, viz.:
 

 “Those who have lived together in open concubinage are respectively incapable of making to each other, whether inter vivos or mortis causa, any donation of immovables; and if they make a donation of movables, it cannot exceed one-tenth part of the whole value of their estate. Those who afterwards marry are excepted from this rule.”
 

 Plaintiffs contend that the testamentary disposition in favor of the defendant falls within the inhibition of the codal article, because the testatrix and the legatee were, in legal intendment, living together in open concubinage. They concede that the testatrix, having contracted the marriage in good faith, was the putative wife of the defendant and entitled, as such, to the civil effects produced by the marriage. Oiv. Code, arts. 117, 118. They argue, however, that the same rule
 
 *1025
 
 is inapplicable to tbe defendant, because tbe basis of Ms marriage to tbe testatrix was tbe fraudulent judgment of divorce which he had obtained . against Mrs. Sarilla C. Spence. Their position is that the testatrix, though in good faith and with all the rights and privileges of a lawful wife, was the concubine of the defendant because he was in bad faith and not entitled to claim any rights or privileges by virtue of the marriage.
 

 The defendant’s bad faith is not now a disputable question. It has been judicially determined. See Spence v. Spence, referred to, supra. The issue submitted for decision, therefore, is whether it constitutes open concubinage for a man and woman to live together as husband and wife under the authority of a ceremonial marriage, contracted in good faith by one of the parties and in bad faith by the other, which is subsequently found to be illegal. So far as we are advised, the case is res nova. It differs from Carmena v. Blaney, 16 La. Ann. 245,. where the parties to the marriage were held to be living in concubinage, because both were in bad faith; and from Gauff v. Johnson, 161 La. 975, 109 So. 782, where the parties to the marriage were held not to be living in eoncqbinage, because both were in good faith.
 

 The issue must be decided by the application of legal principles and not by the exercise of sentimental emotions. As tersely stated in one of the briefs filed on behalf of the appellants : “The case must yield to the law and not the law to the case.” Spence’s reprehensible conduct in procuring the dissolution of the marriage with his first wife and his consequent bad faith in contracting the marriage with his second wife have no bearing upon the controversy between the parties. Defendant is not claiming any civil effects from his marriage to the testatrix. His contention is that, in spite of the illegality of the marriage, the second Mrs. Spence was not his concubine. Plaintiffs’ contention, on the other hand, is that, notwithstanding her good faith, the second Mrs. Spence was defendant’s concubine.
 

 Our conclusion is that the codal article (article 1481) was never intended to apply to a putative marriage, in which one of the parties is in good faith. It declares:
 

 “Those who have lived together in open eoneubinage are respectively incapable of making to each other, whether inter vivos or mortis causa, any donation of immovables,” etc.
 

 The parties must be reciprocally guilty; otherwise, no disability attaches to the donor. This is the plain language of the law. The incapacity to receive flows solely from the incapacity to give, which exists only when both parties are guilty of the illicit relation. If the donor be guilty, the innocent donee may receive, and, if the donee be guilty, the innocent donor may give. .In either case the donation is lawful.
 

 Concubinage has a well-defined and well-understood meaning, both in an ordinary as well as in a legal sense. There can be no concubinage without a concubine, and there can be no concubine without a paramour. Webster’s New Int. Diet, defines concubinage to be, “The cohabiting of a man and a woman who are not legally married; the state of being a concubine.” Bouv. Law Diet. Rawle’s Third Revision, p. 579, states: “Concubinage is the act upon the part of the woman of cohabiting with a man without ceremonial marriage.” In Gauff v. Johnson, 161 La. 977, 109 So. 783, this court said: “Concubinage is the act or practice of cohabiting in sexual intercourse without the authority of law or legal marriage.” If one of the parties in good faith lives with the other under the solemn sanction of what purports to be a legal marriage, though the marriage be null, as to the party in good faith it has the same effect as if it is not null. As to that party it has the ordinary effects of a valid marringe. Gauff v. Johnson, supra. In Succ. of Jahraus,
 
 *1027
 
 114 La. 456, 38 So. 417, this court recited the history of the expression “open concubinage” as used in Oiv. Oode, art. 1481, and held that it meant a concubinage “that is plain and above board, without secret, reserve, or disguise, and not merely one that is notorious.”
 

 In the case before us, the elements required to constitute concubinage, much less open concubinage, were not present in the relation existing between' the defendant, W. L. Spence, and the testatrix, Mrs. Mattie Texada Neal. The testatrix was not guilty of any moral wrong in living with the defendant. She lived with him openly as his wife, under the solemn sanction of what purported to be a legal marriage, and not as his concubine. There was nothing in her action obnoxious to the community or subversive of the public morals. The inhibition contained in the codal article is not intended to apply to such a situation. The purpose of the law is to discourage a man and a woman from living together openly as husband and wife without a ceremonial marriage, in the interest of good morals, public order, and the preservation of society. Cole v. Lucas, 2 La. Ann. 952. The illicit connection must result from the willful and deliberate act of both parties. If a ceremonial marriage is performed, and the parties, or either of them, acted in good faith, though there was an impediment to their marriage, due to some error of fact or of law, there can be no concubinage.
 

 The Succ. of Jahraus, referred to supra, cited and strongly relied upon by plaintiffs as the leading case on the subject, did not involve a putative marriage. On the facts, as disclosed by the record, the court held that the parties had not lived together in open concubinage.
 

 Eor the reasons assigned, the judgment appealed from is affirmed. The right is reserved to appellants to apply for a rehearing.
 

 OVERTON, J., recused.
 

 BRTJNOT, J., dissents.