## PURVIS v. PURVIS.

### No. 5081.

Court of Appeal of Louisiana.
Second Circuit.
June 29, 1935.

W. S. Johnson and J. F. Phillips, both of Shreveport, for appellant.

Milton E. Johns, of Shreveport, for appellee.

MILLS, Judge.

Annie Braden Purvis alleges that she married Edward R. Purvis at Texarkana, Ark., on February 16, 1910. That their matrimonial domicile has been for a number of years in Shreveport. That since coming here, on May 18, 1919, they

acquired lot 22, Oakwood subdivision of the city of Shreveport, together with all buildings and improvements thereon, for a consideration of $500 cash and $900 credit. That the cash payment and the credit payments to the extent of $200 were made with her separate funds. She claims that she permitted title to be taken in the name of Edward R. Purvis, because at that time she believed herself legally married to him. She prays that she be recognized as the owner of an undivided one-half interest in the property, or, in the alternative, for a moneyed judgment against Edward R. Purvis in the sum of $700 with interest and costs and recognition of a lien upon said property for said amount.

Defendant denies the marriage, and asserts that at the time it was alleged to have been celebrated plaintiff was married to another man and knew that defendant was married to another woman. That she knowingly lived and continued to live with him only as a companion or concubine. That all of the consideration paid for said property was out of his own earnings. He prays that plaintiff's demands be rejected and, in reconvention, that he be recognized as the owner of said property and that its possession be ordered restored to him.

The lower court rejected plaintiff's demand and gave defendant the judgment in reconvention prayed for. Plaintiff has appealed.

Plaintiff has failed to prove a marriage, or even facts that would justify the finding that she was a putative wife. Prior to this proceeding, she brought suit in Caddo parish for a separation from the alleged husband. Cruel treatment being admitted, her demands were rejected on the sole ground that she had failed to prove a valid marriage. In the present case, upon practically the same showing, another trial judge reached the same conclusion. We have carefully read the testimony and, without reviewing the sordid details, are of the same opinion.

In the face of the man's denial, she offers no proof of the performance of any marital ceremony except her own assertion that it took place. Admitting the prior marriages and her knowledge of same, her showing is even weaker as to their dissolution by divorce. She says that somebody wrote her that her husband had divorced her somewhere in Mississippi. She says she paid no attention to the document; put it in the sewing machine drawer and lost it. The only evidence she offers as to defendant's divorce is her assertion that he told her so. Her testimony on this point is:

"Q. Did you know Mr. Purvis had a living wife, Mrs. Purvis? A. No, I didn't know anything about his wife; he said he had a divorce.

"Q. Did you ask him where it was granted? A. No, I didn't ask anything about it."

In the case of Prieto v. Succession of Prieto, 165 La. 710, 115 So. 911, 913, we find:

"It has been held that where a man is known to be already married, but declares that he has been divorced, such declaration is not even sufficient to create a presumption of good faith on the part of a woman who marries him without further inquiry." Citing Thomas v. Thomas, 144 La. 25, 80 So. 186; Succession of Taylor, 39 La. Ann. 823, 2 So. 581.

It is true that for obvious reasons defendant held her out as his wife, but in this state that does not constitute a marriage.

We are also satisfied, as was the trial judge, that though the woman may have made the actual payments, the funds were supplied out of the wages of the man. The testimony as to donations made to her, out of which she claims to have advanced the money, does not impress the court.

We are satisfied that the only status established is that of concubinage. A concubine should be distinguished from the courtezan or mistress. She is one who occupies the position, performs the duties, and assumes the responsibilities of a wife, without the title and privileges flowing from a legal marriage. She is distinguished from a putative wife in that she knows, or has reason to know, that her relationship is without lawful sanction. Gauff et al. v. Johnson et al., 161 La. 975, 109 So. 782; Succession of Jahraus, 114 La. 456, 38 So. 417, 418.

The latter case thoroughly reviews the legal history of concubinage and defines it to be, "the status of a man and woman who live together as man and wife without being married."

The status only exists where both parties are in bad faith. Carmena v. Blaney,

16 La. Ann. 245; Texada v. Spence, 166 La. 1020, 118 So. 120, 62 A. L. R. 281.

"The disabilities under which the law places persons who have lived in this condition, are created for the maintenance of good morals, of public order, and for the preservation of the best interests of society." Cole v. Lucas, 2 La. Ann. 946.

■ In the furtherance of equity and common justice, certain rights and privileges that exist independent of the relationship of concubinage are not denied them.

In Prieto v. Succession of Prieto, 165 La. 710, 115 So. 911, 913, the court said:

"The defendant contends that, if she was not the wife of Paul L. Prieto, she was his partner in business, and she prays, in the alternative, that her right to a share as a partner in the property accumulated by her and Paul L. Prieto during their domestic association be reserved to her. This court has held that a concubine is entitled to the relief asked for in defendant's alternative prayer. Delamour v. Roger, 7 La. Ann. 152; Lagarde v. Dabon, 155 La. 25, 98 So. 744."

Considering the jurisprudence, we construe this finding to mean no more than that the right of the woman was reserved to judicially assert any claim that she might have arising out of some business conducted by the parties, independent of the concubinage.

In the Delamour Case the parties were actually engaged in a commercial enterprise to which the court found their illicit relations merely an incident. In that case it was held:

"There is a manifest difference between an action for the wages or reward promised in consideration of concubinage, which cannot be maintained; and a suit for property, the result of capital, industry, labor and economy."

This distinction is recognized in: Viens v. Brickle, 8 Mart. (O. S.) 11; Succession of Pereuilhet, 23 La. Ann. 294, 8 Am. Rep. 595; Malady v. Malady, 25 La. Ann. 448; Succession of Llula, 44 La. Ann. 61, 10 So. 406, 407.

In the last case cited, the doctrine is there stated:

"Where the relationship of concubinage is incidental, and is not the motive and cause of the parties living together, the concubine can recover from the estate of the deceased, if it has been enriched by her industry. There is a quasi contract on the part of the deceased to make compensation. * * * The relation of concubinage does not prevent the concubine from demanding a settlement of the affairs during its existence, and a participation in profits derived from capital and labor which she contributed, although the property is immovable, and stands in the name of the deceased."

But her demands were rejected because,

"The plaintiff did not contribute in capital and labor to the acquisition of the property left by the deceased. The adulterous connection was the motive and prime cause of the concubinage."

In the case of Simpson v. Normand, 51 La. Ann. 1355, 26 So. 266, 270, after a most painstaking review of all the authorities, the court said:

"Conceding all that plaintiff claims, and considering all she admits under oath, the value which is placed upon her services as house servant and laborer of the defendant is so completely combined with those in remuneration for her illicit cohabitation with Normand as concubine as to be completely indistinguishable one from the other; and, the taint existing, it fatally affects plaintiff's entire demand, in all its parts, and renders it wholly and entirely void. For the enforcement of a contract thus circumstanced she has neither remedy nor redress in a court of justice."

In the present case, defendant was throughout the period a workman receiving wages. There is no claim of the conduct of any business.

The parties, in December, 1909, at Hot Springs, Ark., finding themselves each deserted by their spouse, began living together. Defendant says,

"The understanding was I would take care of her as long as she would live with me, treat me in the right kind of manner, I was to take care of her."

During the whole time the parties lived together, until early in 1934, there is no claim that plaintiff rendered any services other than those incidental to the above relationship. She, therefore, under the authorities cited, is not entitled to judgment on her main demand.

■ Upon her alternative demand, plaintiff has failed to prove that she had advanced any definite sum to defendant in payment for the property. Had she done so, her relation to it would have been that

of any third person. There being no marriage or community, prescription to its recovery would not be suspended. If any money were advanced, it was prior to or within nine months after May 18, 1919. The present suit was filed December 24, 1934. If considered as a loan, the claim is subject to the three-year prescription; otherwise, to that of ten years. Lagarde v. Dabon, supra; Succession of Llula, supra.

Defendant has pleaded both.

We find the judgment of the lower court correct, and it is accordingly affirmed.