94 So.2d 270 (1957)
232 La. 310
SUCCESSION of Katie ROTH, Widow of Frederick FRANZ and
Succession of Mrs. Katie (Katy) Roth, Widow of Fred Franz.
No. 42875.
Supreme Court of Louisiana.
February 25, 1957.
Rehearing Denied April 1, 1957.
*272 Piazza & Gulotta, Simon & Wicker, Curtis, Foster & Dillon, Felix W. Gaudin, New Orleans, for plaintiffs-appellants.
Jones T. Prowell, Joseph V. Ferguson, II, Jackson P. McNeely, Cobb & Wright, Herman M. Baginsky, New Orleans, for defendants-appellees.
GUIDRY, Justice ad hoc.
Mrs. Katie Roth, widow of Frederick Franz, died in the City of New Orleans at DePaul Sanitarium on October 22, 1953, at the age of approximately seventy-seven years, leaving a very considerable estate. Her estate is valued at approximately one million eight hundred thousand dollars. Her husband, Frederick Franz, died in the year 1939. She left no forced heirs. Her legal heirs are her blood first cousins who are the plaintiffs-appellants in this suit.
Mrs. Franz left a last will and testament in the olographic form dated March 17, 1948, in which she made eighteen special cash legacies to different persons aggregating the sum of fifty-two thousand six hundred dollars, one of which, in the sum of ten thousand dollars, and a special legacy of her home and its contents and an adjacent lot was made to defendant, Mark J. Falgoust. In this will the testator made Mark J. Falgoust her universal legatee and appointed him testamentary executor with seizin and without bond and with the provision that he should receive a commission for his services in addition to the legacies made to him.
Mrs. Katie Roth Franz had previously made a nuncupative will by act before Felix W. Gaudin, Notary Public, under date of April 4, 1945. A codicil to this will was made by Mrs. Franz in the nuncupative form by public act before Felix W. Gaudin, Notary Public, under date of October 22, 1947. In her will dated April 4, 1945, Mrs. Franz made twenty-four cash legacies to twenty-four different persons aggregating the sum of ninety-one thousand one hundred dollars, including one in the sum of ten thousand dollars to Defendant, Mark J. Falgoust. She did not in this will dispose of the balance of her property. She appointed August H. Grimaldi, Sr., as executor of her estate with seizin and without bond and appointed Felix W. Gaudin as attorney to handle the affairs of her estate. By the codicil of October 22, 1947, the legacies made by the will of April 4, 1945, were not affected. Two additional legacies were made by which the testator bequeathed to Ralph Comers Grimaldi the sum of two thousand dollars and bequeathed to Mark J. Falgoust the residence, 2318 St. Charles Avenue, and the adjacent lot and the entire contents of the home and of the property, with the exception of the iron safe and contents. By the codicil Mark J. Falgoust and August H. Grimaldi, Sr., were made residuary legatees each for one-half of the property not specifically otherwise disposed of by the will April 4, 1945, and the codicil. Felix W. Gaudin was reappointed as the attorney to handle the legal affairs of the succession of the testator. From the foregoing it will be seen that Mrs. Franz by her olographic will of March 17, 1948, effected the following changes in the provisions of the will of April 4, 1945, and the codicil of October 22, 1947: she eliminated seven cash legacies amounting to twenty-four thousand five hundred dollars and reduced four cash legacies by the amount of sixteen thousand dollars. She did not reduce, or otherwise change the special cash legacy to Mark J. Falgoust but she did change the special legacy to him of her residence and the adjacent lot so as to include all of the contents of the house and of the property. She made Mark J. Falgoust her universal legatee. She appointed him her testamentary executor in place of August H. Grimaldi, Sr., thereby completely eliminating the latter from her will. In the paragraph appointing Falgoust executor she added the provision:

*273 "He shall receive a commission for his services in addition to the legacies decreed to him."
Because of the attack made upon the validity of Mrs. Franz's olographic will on the ground that she lacked testamentary capacity it should be noted that in making her olographic will Mrs. Franz followed, with one exception, the same order in making her dispositions as she had followed in making her nuncupative will by public act on April 4, 1945, and the codicil of October 22, 1947, using essentially the same choice of words in describing the legatees and the legacies made to them, from which it is reasonable to assume that in writing her olographic will she had access to her will executed April 4, 1945, and to the codicil thereto executed October 22, 1947, and made reference thereto. In this connection it is also noted that Mrs. Franz in her olographic will, though, in most instances, she copied word for word the several paragraphs of her former will and codicil in making her special legacies, she, nevertheless, corrected errors in spelling which appear in the 1945 will. For instance in the paragraph containing the legacy to Mrs. Fred Eckert, her surname is correctly spelled, whereas in the 1945 will it is spelled Eckard; in the paragraph containing the legacy to Lawrence Franz, his christian name is correctly spelled, whereas in the 1945 will it is spelled Laurence; in the paragraph containing the legacy to August Giroir, his surname is correctly spelled, whereas in the 1945 will it is spelled Girois; in the paragraph containing the legacy to Frank Seymore, his surname is correctly spelled, whereas in the 1945 will it is spelled Seymour.
Mark J. Falgoust, who is named executor in the olographic will of March 17, 1948, attempted to probate this will, whereupon the legal heirs of Mrs. Franz, who are the plaintiffs-appellants, filed a petition opposing ab initio the probate, registry and execution of this will and the codicil to the 1945 will dated October 22, 1947, and praying that said will and codicil be declared null and void and, in the alternative, and in the event the Court should determine otherwise, that defendant, Mark J. Falgoust, be disqualified as a special or universal legatee under the provisions of either will or both for the reason that he attempted to take the life of the decedent. Briefly stated, the allegations of the petition in support of the prayer thereof are as follows:
1. The testator was insane on October 22, 1947, and on March 17, 1948, and therefore, on those dates she lacked testamentary capacity.
2. The olographic will of March 17, 1948, was not entirely written, dated and signed by the testator and was not written on March 17, 1948.
3. In the alternative, if the Court should determine that testator was sane on October 22, 1947, and on March 17, 1948, and that the olographic will dated March 17, 1948, was entirely written, dated and signed by the testator then and in such event the testator was on those dates acting under fear, duress and undue influence as set forth in the petition.
4. Mark J. Falgoust and the testatrix lived in open concubinage from April, 1946, until September 25, 1951.
5. Mark J. Falgoust attempted to take the life of the testatrix.
Exceptions to the said petition were filed by Mark J. Falgoust. These exceptions were overruled. Mark J. Falgoust, defendant-appellee, filed an answer to the petition of John W. Kleis, et al., denying the allegations of the petition and asserting the validity of the will dated March 17, 1948. Six persons named as special legatees in the will dated March 17, 1948, namely, Mrs. Evelyn Belmont, George Brown, August Giroir, Frank Seymore, Louis Schneider and Protestant Home for the Aged also filed answers denying the allegations of said petition for lack of information. Felix W. Gaudin and August H. Grimaldi, *274 Jr., and Eugene A. Grimaldi, executors of the Estate of August H. Grimaldi, Sr., defendants-appellants, filed an answer attacking the validity of the will dated March 17, 1948, and opposing the probate, registry and execution thereof on the ground that it is null and void and, in the alternative, in the event that the Court should decree that the will was entirely written by the testator, they allege that certain paragraphs on Page Three of the will are nullities as undated and unsigned codicils and prayed that they be stricken with nullity.
The National American Bank in New Orleans appointed by the lower Court as probational administrator of this estate is acting as such.
After a very lengthy trial in the lower Court the Judge rendered an order or judgment dismissing all oppositions to the validity of the will dated March 17, 1948, and the demands of John W. Kleis, et al., and the Grimaldi Heirs and their counsel. John W. Kleis, et al., and the Grimaldis and their counsel have taken an appeal to this Court. Counsel for some of the special legatees have filed a brief in this Court in support of the affirmation of the judgment of the lower Court.
The law of the case is well established except as to the effect of the insertion by a testator in the body of his will of additional provisions or legacies after the will has been wholly written, dated and signed by him. For the reasons hereinafter stated it is not necessary that we pass upon this point of law in this case.
(1) In determining the validity of a will the trial Judge's findings of fact are entitled to great weight and should not be disturbed unless they are clearly or manifestly erroneous. Lebleu v. Manning, 225 La. 1087, 74 So.2d 384; Succession of Pizzati, 218 La. 549, 50 So.2d 189; McCarty v. Trichel, 217 La. 444, 46 So.2d 621.
(2) Testamentary capacity is always presumed until the contrary is affirmatively established by satisfactory and convincing evidence, and under this well established principle of law a legal presumption exists in favor of the validity of the will. Kingsbury v. Whitaker, 32 La.Ann. 1055; Chandler v. Barrett, 21 La.Ann. 58; Succession of Mithoff, 168 La. 624, 122 So. 886; Clanton v. Shattuck, 211 La. 750, 30 So.2d 823; Succession of Pizzati, 218 La. 549, 50 So.2d 189; Succession of Schmidt, 219 La. 675, 53 So.2d 834.
(3) An olograph will itself is the best evidence of the testamentary capacity of the testator if it is sensible and judicious. Succession of Schmidt, 219 La. 675, 53 So. 2d 834; Kingsbury v. Whitaker, 32 La.Ann. 1055.
(4) Under our law no inquiry is permitted into the motives which may have influenced a testator in making his testamentary dispositions. LSA-Civ.Code, art. 1492. The undue influence, such as intimidation and fraud necessary to procure the annulment of a testamentary disposition must have been exercised upon the testator at the moment the will was executed. Texada v. Spence, 166 La. 1020, 118 So. 120, 62 A.L.R. 281; Succession of Schlumbrecht, 138 La. 173, 70 So. 76; Succession of McDermott, 136 La. 80, 66 So. 546; Zerega v. Percival, 46 La.Ann. 590, 15 So. 476.
(5) In LSA-Civil Code, article 1481, the word "concubinage" describes a status and not mere acts of fornication or adultery however frequent or even habitual, it imports the maintenance of a status resembling marriage and the word "open" means free from concealment, reserve or disguise, not secret, but plain and above board. The mere fact that two unmarried people reside in the same house is no proof of concubinage open or secret. Jones v. Kyle, 168 La. 728, 123 So. 306; Succession of Jahraus, 114 La. 456, 38 So. 417.
According to the briefs filed in this Court both groups of opponents now admit that the will dated March 17, 1948, was entirely *275 written, dated and signed by the testatrix, and the Kleis opponents have abandoned the allegations of their petition to the effect that Mark J. Falgoust is disqualified as a legatee under wills of Mrs. Franz, for having attempted to take her life. Therefore, the ultimate questions for determination are of fact, i. e.,
1. Whether the paragraph on Page Three of the olographic will reading: "I give and bequeath all the balance of my property to Mark J. Falgoust", and the words, "Mark J. Falgoust", in the succeeding paragraph were written in after the will was a completed document.
2. Whether the testatrix was insane at the time the olographic will of March 17, 1948, was written and, if so, whether she was also insane at the time of the execution of the codicil on October 22, 1947.
3. Whether the testatrix executed either the will or the codicil under duress, force or undue influence.
The Grimaldis, as stated, concede that the olographic will of March 17, 1948, was entirely written, dated and signed by Mrs. Franz, but they contend that the paragraph on Page Three of the will reading: "I give and bequeath all the balance of my property to Mark J. Falgoust", and the words, "Mark J. Falgoust", in the succeeding paragraph were inserted by the testatrix in the body of the will many months after the remainder of the will had been written, dated and signed by her, and, that, therefore, these portions of the will should be stricken with nullity as undated and unsigned codicils. In their attempts to establish this contention as a fact, opponents to the will offered the testimony of Gilbert Fortier of New Orleans, Louisiana, a so called examiner of questioned documents, Dr. Philip W. West of Baton Rouge, Louisiana, a professor of chemistry at Louisiana State University, and Dr. Paul L. Kirk of Berkeley, California, Professor of Criminalistics at the University of California. To meet this testimony, Defendant Falgoust offered the testimony of four so called examiners of questioned documents or handwriting experts, namely, Albert D. Osborn of New York City, George J. Lacy of Houston, Texas, Linton Godown of Memphis, Tennessee, and Clark Sellers of Los Angeles, California. The testimony of these handwriting and other experts is voluminous and cannot be gone into in detail. However, an analysis of the testimony of these handwriting experts will show that any part thereof which might be construed as tending to show that the will of March 17, 1948, was not entirely written, dated and signed by the testator at one and the same time is purely conjectural. The preponderance of the evidence is to the effect that the will was not only entirely written, dated and signed by the testator but was entirely written, dated and signed by her at one and the same time. Much has been made over the fourth paragraph of Page Three of the olographic will reading as follows:
"I give and bequeath all the balance of my property to Mark J. Falgoust."
For instance, it was brought out that the writer had skipped a line in writing this paragraph but as has been pointed out the testator also skipped a line in the second paragraph of Page One of her will. Therefore, this fact is of no particular significance. Then again it was suggested that this paragraph and the words:
"Mark J. Falgoust"
had been inserted in the will long after the balance thereof was written. There is no substantial basis for this theory. None of the experiments conducted by the handwriting experts and no part of their testimony in connection therewith which tends to support this theory is very impressive when a close examination of the will itself it made. The trial judge was impressed with the testimony of Messrs. Lacy, Osborn and Sellers, and so are we, as their testimony is clear, plain and well illustrated. They appear to have testified frankly and *276 honestly giving valid reasons for their conclusions. For instance, Mr. Osborn testified as follows concerning the writing of the disputed paragraph:
"We also believe that she did not immediately proceed to write the disputed paragraph after she had written the word `deductions' in the preceding paragraph."
As has been previously shown it is reasonable to assume that when Mrs. Franz wrote her olographic will dated March 17, 1948, she referred to her nuncupative will of April 4, 1945, and to the codicil thereto dated October 22, 1947. Indulging in this reasonable assumption it is also reasonable to conclude that Mrs. Franz, after copying the paragraph ending with the words, "without any deductions," from the will dated April 4, 1945, paused and reached for the codicil thereto dated October 22, 1947, to see what wording had been used in the codicil to make Mark J. Falgoust and August Grimaldi her universal legatees therein, since she had not made a universal legacy in the will from which she was copying. This accounts not only for the break from her previously continuous writing but also for the deleted "J" before the word "I" in the disputed paragraph. She was probably debating with herself how to write this paragraph so as to eliminate August H. Grimaldi, Sr., as a legatee and started to write before completing her thinking, causing her to make an "I" that looked like a "J". The objections to the succeeding paragraph are removed when it is considered that the testator had to return to her will of April 4, 1945, for guidance in writing the paragraph appointing an executor, as the codicil of October 22, 1947, contains no such appointment.
We will now consider the question of the testamentary capacity of the deceased at the time she wrote the olographic will dated March 17, 1948.
A review of the many cases brought to this Court in which wills have been attacked on the grounds of the insanity of the testator will reveal that there have been but few instances where the evidence has been found sufficient to warrant the annullment of the will. The proof of insanity must be strong and a great deal depends upon the type of insanity involved. The jurisprudence discloses that the difficulties encountered by suitors assailing wills on grounds of the insanity of the testator has been due, in the main, to the inability to submit the degree of proof necessary to overcome the presumption of sanity. Thus, in each case, the weight of the evidence is the all important factor.
Therefore, whether Mrs. Franz was insane on March 17, 1948, the date her last will was written, presents for our determination a question of fact, which was resolved against the opponents of the will by the trial judge, and his findings are entitled to great weight and should not be disturbed unless they are clearly or manifestly erroneous.
Mrs. Katie Roth Franz, a lifelong resident of the City of New Orleans, accumulated, as has been previously stated, a very substantial estate. Her husband, Frederick Franz, died in the year 1939, and thereafter Mrs. Franz lived alone at her residence on St. Charles Avenue until about April, 1946, when at her invitation, Mark J. Falgoust went to live with her. Mark J. Falgoust had met Mrs. Franz and her husband for the first time about the year 1927. They became friendly, and, together made trips to Atlantic City, New Jersey, and New York. Several times they made trips to Mobile, Alabama. Falgoust was a frequent guest in the home of Mr. and Mrs. Franz. During the time he served in the army during World War II, Falgoust and Mrs. Franz kept a correspondence and, prior to his return to the United States, Mrs. Franz wrote to him that she had prepared a room for him in her home and hoped that he would reside there upon his return to the United States. Falgoust upon his discharge from active duty in the armed forces in the *277 year 1946, accepted Mrs. Franz's invitation to live in her home. He resided there through the year 1951. At the time that Falgoust went to live with Mrs. Franz he was in his early forties and she was in her seventies.
According to the testimony of Dr. H. Oliver Ernst, her family physician, Mrs. Franz was hospitalized in Touro Infirmary in the year 1937. She was then suffering with diabetes mellitus, hypertensive heart disease (high blood pressure) and a generalized arteriosclerosis. She suffered a broken wrist in the early part of the year 1947. She sustained a broken arm in January, 1948. She had a back infection in the year 1949 or 1950. She was hospitalized in Touro Infirmary in June, 1951, for an ulcer on her left foot. After a short stay at Touro Infirmary she returned to her home where she was under the care and supervision of Dr. Ernst and trained nurses on a twenty-four hour basis. Mrs. Franz was taken to DePaul's Sanitarium on September 25, 1951, where she remained until her death on October 23, 1953.
Before her death, that is in September of 1951, suit was filed by the plaintiffs-appellants herein to have Mrs. Franz interdicted and judgment of interdiction was rendered in December, 1951. During the interdiction proceedings an inventory was ordered taken which necessitated the breaking into Mrs. Franz's bank box in the National Bank of Commerce. The notaries making the inventory found therein three wills and a codicil, viz.:
1. A will of decedent in olographic form dated August 25, 1923, in which she had bequeathed her estate to her husband, Frederick Franz.
2. A will in nuncupative form by public act before Felix W. Gaudin, Notary Public, dated April 4, 1945.
3. A codicil to the will of April 4, 1945, in nuncupative form by public act before Felix Gaudin, Notary Public, dated October 22, 1947, and,
4. An olographic will dated March 17, 1948.
A review of the testimony will indicate that as regards medical opinions concerning the testamentary capacity of the decedent, opponents must of necessity, rely almost entirely upon the testimony of Dr. H. Oliver Ernst to support their contention that the decedent did not possess testamentary capacity when she executed the olographic will dated March 17, 1948, for the reason that the opinions given by Doctors Edmund Connoly, Benjamin F. Parker and Gene S. Usdin, who were called as witnesses for plaintiffs-appellants, in this regard, are largely if not entirely predicated and dependent upon the correctness of the conclusions reached by Dr. Ernst as to the medical and mental condition of Mrs. Franz at various times from the year 1937 to the date of her admission to DePaul Sanitarium. The testimony of Dr. Ernst is therefore of utmost importance. The trial judge, in his written reasons for judgment, after observing that the testimony of Dr. H. Oliver Ernst, Mrs. Franz's physician for many years, was taken out of Court because of his physical condition and is very voluminous and after quoting from his testimony had this to say:
"The testimony of Dr. Ernst, taken as a whole, and particularly that above quoted, in the Court's opinion, does not overcome the presumption of sanity as the Court understands the jurisprudence herein cited.
"Certainly it cannot prevail in view of the testimony adduced by defendant Falgoust hereinafter discussed."
We agree with the trial judge. Dr. Ernst did not see Mrs. Franz on March 17, 1948, and was not present at the writing of the will. He admitted that the conditions which he observed and the conclusions which he drew therefrom concerning the mental capacity of Mrs. Franz were not continuously present on a day to day basis for the period from the year 1946 through the year 1950. He declined to swear that Mrs. Franz *278 lacked testamentary capacity on March 17, 1948. In his statement, upon the admission of Mrs. Franz at DePaul's Sanitarium on September 27, 1951, he stated that he considered that Mrs. Franz had been psychotic for a year or more, perhaps two-three years with intervals of lucidity, yet in his deposition he expressed the opinion that Mrs. Franz was mentally incompetent to execute a last will and testament as far back as October 22, 1947.
The trial judge, in his written reasons for judgment, commented upon the testimony of Doctors Edmund Connoly, Benjamin F. Parker and Gene S. Usdin, as follows:
"Dr. Edmund Connoly and Benjamin F. Parker saw Mrs. Franz after she was admitted to Touro Infirmary, July 2, 1951, and to DePaul Sanitarium on September 25, 1951, and base their answers on hypothetical questions on what they saw of her from then until her death on October 22, 1953, and on conversations with Dr. Ernst. They both testified that, considering her condition during the above time, she was not competent to execute a will on October 22, 1947, and March 17, 1948, three and one-half to four years before. Dr. Gene Usdin read the testimony of Dr. Ernst and, the undersigned believes, spoke to him; he did not see Mrs. Franz at any time."
None of these medical experts, called by plaintiffs-appellants, saw Mrs. Franz before July 2, 1951, over three years after Mrs. Franz had written her olographic will, and their conclusions, it is clear from a reading of their testimony, are not predicated so much upon their observations of Mrs. Franz after July 2, 1951, but upon the medical history of Mrs. Franz as given to them by Dr. Ernst and contained in his deposition.
As against the testimony of Doctors Ernst, Connoly, Usdin and Parker we have the testimony of Dr. Charles S. Holbrook, a psychiatrist, and that of Dr. Edward S. Hyman, a specialist in diabetes and internal medicine, who were called by defendant-appellee, with which we are impressed, as, their conclusions are more in accord with the common everyday observations of the everyday practitioner and the layman. Dr. Holbrook testified that there is no method known to medical science wherein a psychiatrist can determine when a person who is a senile will pass into senile dementia and that there is no means by which to determine when a person who is demented because of senility passed from senility into senile dementia. Dr. Holbrook also testified that the various other physical illnesses with which Mrs. Franz was afflicted could not be used to determine their effect upon her brain and intellectual capacities unless such diseases had reached the point that various outward signs would have been observed by anyone coming in contact with her. He stated that if these diseases had resulted either in a stroke of some nature or in diabetic coma, some marked changes might have occurred in the brain, however, he ruled out such damage to the brain because of the fact that Mrs. Franz had not suffered from a stroke of any sort nor had she ever been in a diabetic coma. Dr. Holbrook further testified that had Mrs. Franz been demented because of her senility, any intelligent lay person coming in contact with her during the existence of such condition would have readily observed it; that information with respect to her daily contacts and conduct of business was material to the forming of an opinion as to her sanity. He also testified that one of the criteria used by psychiatrists in determining the mental condition of their patients is writing by the patient. He examined the will of March 17, 1948, and expressed the opinion that the person who wrote the will was sane and that if the will was written by Mrs. Franz, she was sane when it was written. He based his conclusions on the length of the document, the composition, the writing, the manner of the bequests, the fact that it bore a place and date.
*279 Dr. Holbrook expressed the opinion that Mrs. Franz was definitely sane on March 17, 1948, and based his opinion upon the will dated March 17, 1948, and interviews he had with various lay persons who had contact and business dealings with Mrs. Franz and whose testimony was offered in evidence.
Dr. Edward Hyman, testified that, in his opinion there was no connection between the diseases with which Mrs. Franz was afflicted and senile dementia. He stated that considering the age of Mrs. Franz at the time she became a diabetic, this disease was rather mild in character and that no serious problems to her health resulted from the fact that she frequently ate sweets in violation of her diet. Dr. Hyman further testified that a person could be afflicted by arteriosclerosis in various parts of the body without the brain being in any manner affected thereby and that the only way known to medical science in the absence of a stroke to determine if a person was afflicted with arteriosclerosis of the brain was to perform an autopsy after death. Dr. Hyman pointed out that Mrs. Franz had not suffered from a stroke nor had she ever been in diabetic coma and therefore there were no grounds whatsoever to assume that her brain had been in any way damaged or impaired because of the diseases from which she suffered.
The trial judge, in his written reasons for judgment, commented upon the testimony of each of the lay witnesses offered by plaintiffs-appellants to prove the insanity of Mrs. Franz on October 22, 1947, and March 17, 1948, and expressed his conclusions regarding the weight to be given such testimony as follows:
Miss Marie Hitchens
"On the question of insanity or duress at the time of the making of the two wills, her testimony is of no weight."
Mrs. Fred J. Eckert
"So far as testimony of Mrs. Eckert is concerned in the Court's opinion it tends to be in favor of the legality of the will dated October 22, 1947, in that Mrs. Franz was not mentally ill on October 22, 1947, and was not subjected to undue influence by Falgoust at the time the will was made. She could not help the Court at all as to Mrs. Franz's mental condition on March 17, 1948, or as to any undue influence used by Falgoust on that date."
Fred Delsa
"Fred Delsa's testimony was of no help whatever to the undersigned in determining the mental condition of Mrs. Franz at the time of the making of the two wills, or as to whether or not there was any undue influence upon her on those dates."
Mrs. Janet Murphy
"In view of the fact that Mrs. Murphy was at the Franz home only in the morning for about 45 minutes and was not present at the time or in the premises when either of the two wills were made, because her testimony shows she was not, the undersigned cannot place a great deal of weight on her testimony as to either mental incapacity of Mrs. Franz at the time of the wills, or undue influence."
Mrs. Eva Murdock
"The Court does not feel that her testimony is entitled to much weight."
"Miss Betty Fennin threw absolutely no light on the mental condition of Mrs. Franz on the date of the wills or as to undue influence."
Defendant Falgoust produced thirty-two witnesses who testified to the ability of Mrs. Franz to manage her affairs before and after October 22, 1947, and March 17, 1948. The testimony of these witnesses, *280 taken together is of such length that the lower Court did not attempt to review it in detail. In support of the testimony of some of his witnesses defendant-appellee also offered in evidence five acts of sale in which Mrs. Franz was involved, dated respectively, February 19, 1948, August 5, 1948, June 17, 1949, December 28, 1949, and May 27, 1951, and an order in Mrs. Franz's interdiction proceedings, dated October 3, 1951, for the purpose of showing that the will of March 17, 1948, was found in her bank box to which she alone had access. A review of this testimony proves beyond a doubt that from the year 1946 up to the middle of the year 1951 Mrs. Franz withdrew monies from her savings accounts in the Whitney National Bank, the National American Bank and the National Bank of Commerce; signed withdrawal receipts therefor and instructed bank officials to issue cashier's checks with which to pay her real estate taxes and federal income taxes; entered her safety deposit vault and signed the card in the vault records; handled real estate negotiations for the purchase and sale thereof and signed agreements and Acts of Sale before Notaries in connection therewith; spoke to officials of the City of New Orleans in making payments of her taxes; collected her rents, giving receipts therefor, which she had written out in advance herself; visited her properties while they were being repaired; paid her workmen off, and was known by those who generally saw and conversed with her not to be in any unusual state mentally or in a state of mental derangement. LSA-C.C. art. 1788, paragraph 3.
We concur in the opinion of the trial judge that the testimony of the lay witnesses called by Defendant-Appellee Falgoust and the documentary evidence offered by him in connection therewith preponderates to the effect that Mrs. Franz had testamentary capacity when she wrote her olographic will of March 17, 1948.
In their attempt to prove that the codicil of October 22, 1947, and the will of March 17, 1948, were executed under threats, duress and fraud, plaintiffs-appellants offered the testimony of Dr. Ernst, Miss Marie Hitchens, Mrs. Fred J. Eckert, Mrs. Janet Murphy and Mrs. Eva Murdock. That part of the testimony of these witnesses relating to duress, force or undue influence exerted by Mark J. Falgoust over Mrs. Franz was admitted solely for the purpose of permitting plaintiffs-appellants to prove if they could, in conjunction with other evidence, that Mrs. Franz lacked testamentary capacity on October 22, 1947, and March 17, 1948, as none of this evidence could be construed as showing the existence of these conditions either on October 22, 1947, or March 17, 1948. This was done in line with the decision of this Court in the case of Cormier v. Myers, 223 La. 259, 65 So.2d 345, which is to the effect that though duress, force or undue influence are not grounds for declaring a will void unless they are present at the making of the will, evidence thereof nevertheless is admissible to show testamentary incapacity and mental weakness. After reading the testimony of these witnesses we agree with the conclusion of the trial judge that none of this evidence proves that Mrs. Franz labored under duress, force or undue influence at the time she executed the codicil on October 22, 1947, or when she wrote her olographic will of March 17, 1948. We have already reached the conclusion that Mrs. Franz possessed testamentary capacity on October 22, 1947, and March 17, 1948.
Plaintiffs-appellants contend, assuming the validity of the wills of Mrs. Franz, that the donations of immovables and the donations of movables in excess of one-tenth (1/10) of the value of decedent's estate, made to Mark J. Falgoust are invalid because the deceased and Mark J. Falgoust lived in open concubinage. There are no specific allegations in plaintiffs-appellants' petition to the effect that Mark J. *281 Falgoust and Mrs. Franz lived in open concubinage. The lower Court permitted testimony of the alleged intimacy between Falgoust and Mrs. Franz only in connection with the question of the sanity or insanity of Mrs. Franz. However, the petition contains numerous allegations which when taken as a whole may be construed as alleging that the decedent and Mark J. Falgoust lived in open concubinage from April 1946, until September 25, 1951. The evidence offered to prove this falls far short of its intended mark. We are not impressed with the conversations between the decedent and Mark J. Falgoust in DePaul Sanitarium as recorded on a tape recorder nor with the testimony offered by plaintiffs-appellants to establish the status of "concubinage" as existing between decedent and Falgoust and much less the status of "open concubinage" between them which is the status necessary under LSA-C.C. art. 1481, to render persons incapable of making to each other donations of immovables and donations of movables exceeding one-tenth (1/10) part of the whole value of this estate. Mrs. Fred J. Eckert testified that Mrs. Franz had told her that Falgoust dressed her and washed her hair. However, she also testified that when she called Falgoust's attention to the physical condition of Mrs. Franz, when she was about to go to DePaul Sanitarium, Falgoust said, "We will wait and get Janet (meaning Mrs. Murphy) to do it". Miss Marie Hitchens, a registered nurse who took care of Mrs. Franz during July and August, 1951, testified that Falgoust put Mrs. Franz to bed and bathed her. But Mrs. Olga DeFelice, who was nursing Mrs. Franz in the mornings during July and August, 1951, testified that she was the one who bathed Mrs. Franz and gave her medication. The balance of the evidence offered by plaintiffs-appellants for the purpose of proving that the decedent and Mark J. Falgoust lived in open concubinage is not more convincing. On the other hand, we have the testimony of three character witnesses called by Falgoust and the history of his activities since boyhood, from which it is reasonable to assume that he would not commit the acts of immorality alleged. Moreover, the record is replete with testimony to the effect that Mrs. Franz's conduct was always beyond reproach.
For the reasons assigned the judgment of the lower Court is affirmed.