SWIFT, Judge.
The decedent, Norris Vegas (whose first name is spelled various ways in the record), died in the City of New Orleans on January 1, 1967. He never married, and was survived by a brother, eleven Vegas, a sister, Mrs. Florida Vegas Fremin, and Eves Vegas, Aline Vegas Sterling, John Vegas, Eddie Vegas, David Vegas, the children of Pierre Vegas, a predeceased brother.
Decedent left a last will and testament executed in the statutory form provided by LSA-R.S. 9:2442 in which he bequeathed all his property to Cl even Vegas and Mrs. Florida Vegas Fremin. When the will was presented for probate, Eves Vegas, Aline Vegas Sterling, John Vegas, Eddie Vegas and David Vegas filed an opposition, alleging that their uncle could not read and therefore lacked the capacity required for the execution of such a will.
After trial of the opposition the judge concluded the decedent could read well enough to execute a will under the perti *291 nent statute and that his will was valid. This appeal resulted.
Opponents’ only witness was Mrs. Ernestine Vegas, who was their mother and the decedent’s sister-in-law. This lady had known the decedent from childhood and saw him frequently while they both resided in Cut Off, Louisiana, before he moved to New Orleans apparently some time in the 1940’s. She testified he never attended school and could not read or write. Mrs. Vegas also recalled one occasion in about 1936 when the decedent requested her assistance in reading and interpreting his bank statement.
On the other hand, the proponents of the will and two attorneys in whose presence decedent had executed legal documents shared the opinion that he could read.
Cleven Vegas said the decedent attended night school in Cut Off, Louisiana, for about two years and also in New Orleans for approximately the same length of time. He had seen the decedent read the names of the addresses on letters and endorse checks.
Mrs. George Fremin also testified that decedent attended night school in New Orleans. She recalled his reading newspapers, particularly the sports pages, and telling her the names of the participants in prize fights and wrestling matches.
Mr. Ingard O. Johannesen, the attorney who prepared the contested will and the notary public before whom it was executed, stated he had known the decedent since the latter part of the 1940’s and from all indications he was able to read. In regard to the circumstances surrounding the execution of the will, Mr. Johannesen related he went over it with the decedent and his doctor (who signed as a witness, but was deceased at the time of the trial), while both had copies before them. Decedent then acknowledged that the instrument was his will as it was his desire that his brother and sister inherit his property. Before this Mr. Vegas had examined and executed other legal documents prepared by Mr. Jo-hannesen, and appeared to be reading them in the latter’s presence.
Mr. Corwin Reed testified he went to the decedent’s house in 1958 and concluded a compromise settlement relating to the succession of decedent’s sister. According to this witness, Mr. Vegas seemed to understand the contents of the legal document which was read aloud by Mr. Reed before it was executed by decedent. The lawyer assumed the latter read it with him. There was no indication he was unable to read.
In LeBeau v. Manning, 225 La. 1087, 74 So.2d 384 (1954), a somewhat similar case involving a different type of will, our Supreme Court said:
“The policy of our law is to maintain the validity of a will if possible. * * * Wills are presumed to be valid until the contrary is shown and testamentary capacity is also presumed until the presumption is destroyed by cogent, satisfactory and convincing evidence. * * * ” (Authorities omitted. 74 So.2d 385).
Also, in Succession of Franz, 232 La. 310, 94 So.2d 270, (1957) the court said:
“In determining the validity of a will the trial Judge’s findings of fact are entitled to great weight and should not be disturbed unless they are clearly or manifestly erroneous.” (Authorities omitted. 94 So.2d 274.)
With these rules in mind we conclude that the opponents have not established the decedent’s incapacity to execute a will under LSA-R.S. 9:2442 by clear and convincing evidence and that the judgment of the lower court recognizing the validity of his will is correct.
Appellants’ contention that the trial judge erred in refusing to admit in evidence the records of two court proceedings wherein: (1) decedent was committed temporarily to a state hospital in 1933 under *292 our Mental Health Laws, and (2) a curator was appointed in 1953 to handle his benefits under our Veterans’ Guardianship Law, is likewise without merit. The will in this case was not attacked because the decedent lacked mental competency, but only on the ground that he was unable to read. Consequently, such evidence was not only irrelevant and immaterial but was not covered by the pleadings. Also, the reports filed therein constituted hearsay and were clearly inadmissible for that reason.
For the foregoing reasons, the judgment of the trial court is affirmed at appellants’ costs.
Affirmed.