TUCKER, Judge.
This is an action to annul a statutory will drawn for Mrs. Ouida Schilling Branch on March 26, 1969, on the grounds, first, that it was null with respect to its *475 preparation, confection and execution, and secondly that Mrs. Branch, the testatrix, was mentally incompetent to comprehend or appreciate the effects of her acts due to her allegedly advanced arteriosclerosis and resultant loss of memory, and, thirdly, that she had been unduly influenced in the making of this will.
Mrs. Branch died on September 14, 1969, due to causes other than her arteriosclerosis. She left no forced heirs, and her husband had predeceased her in October, 1968. The will, in which she left her entire estate to her husband’s nephew, Robert L. Branch, was probated and filed on October 13, 1969. Subsequently, it was attacked by plaintiffs, her collateral heirs.
The attorney for the testatrix, Haley M. Carter, testified that he had previously prepared wills for Mrs. Branch and her husband, Wilber Branch, in 1961; that he had opened the succession of Mr. Branch after his death in 1968, and had had Mrs. Branch placed in possession of the property. During the course of completing her husband’s succession, Mrs. Branch inquired about a new will, and Mr. Carter advised her to return when she decided what she wanted in the will. On March 26, 1969 she returned to Mr. Carter’s office in the company of Mrs. Myrtis Knight Branch, mother of the universal legatee, for the purpose of getting her will prepared. Since Mr. Carter’s secretary was not in the office on this particular afternoon, the attorney himself typed the will, a very brief document occupying about one-third of a legal sized sheet of paper. While Mr. Carter was preparing the subject will, David D. Vin-ing, manager of the Baton Rouge Production Credit Ass’n in Franklinton, La., came to the attorney’s office, as he often did on business. Mr. Vining agreed to act as a witness to the will; then Mr. Carter read the will in its brief entirety in the presence of the testatrix, Mrs. Branch, who had accompanied her and remained present throughout the proceedings, and Mr. Vining. Mrs. Branch expressed her satisfaction with the will, signed and executed it in the presence of the aforesaid witnesses and Mr. Carter as Notary Public. The witnesses, Mrs. Myrtis Branch and Mr. Vining, and the Notary, Mr. Carter, along with the testatrix, Mrs. Ouida Branch, all signed the will at that time in the presence of each other. The will was delivered to Mrs. Ouida Schilling Branch; she paid Mr. Carter for his services in cash, and he gave her a receipt.
The trial court found the will to be valid, and plaintiffs’ suit was dismissed at their costs. From this judgment plaintiffs appealed.
The plaintiffs claim that this action of nullity, commenced in advance of the expiration of three months after the will was probated, results in the burden of proof that compliance with the formalities of R.S. 9:2442 continues to rest upon the defendant. The defendant, irrespective of where this burden lies, has adequately established and proved that the will under attack was in strict compliance with the formalities prescribed by R.S. 9:2442.
In opposition to the conclusion expressed in the preceding paragraph of this opinion, the appellants urge the nullity of the will due to the fact that Mr. Vining, one of the witnesses to the testament, testified that he did not know the testatrix, the other witness, Mrs. Myrtis Branch, nor did he remember the occasion of his witnessing the will (Tr. 68-72). They further aver that Mr. Vining did not know what he was witnessing and that he did not hear the will read, and did not in fact know that the document was a will; that he was not present when it was signed by the other witness and only signed it as a favor to Mr. Carter, a good friend whose office was near his, and for whom he often acted as a witness; that he did not remember whether or not the testatrix signed the will before he did; and that he did not know the contents of the will. Mr. Vining did indeed testify the will was not read in his presence (Tr. 69), and answered evasively when asked if anyone signed the will be *476 fore he did (Tr. 68 — “She apparently signed it in order for me to witness it.”). However, it was established that the drawing and witnessing of the will took place over a year prior to the trial. Mr. Vining stated that he was in and out of Mr. Carter’s office on occasion, but the court here notes that the will was so brief that it could easily have been read in a few minutes. Mr. Vining testified it was his true signature which appeared on the face of the will, and concluded that he must have witnessed it (Tr. 68). The other witnesses, Mrs. Myrtis Branch and Mr. Carter, the Notary, did testify, however, to the fact that the will was read in the presence of all the signators, including the testatrix, and that all parties signed in the presence of each other. Because of the positive testimony by the two witnesses and the acknowledgment by the third that his signature was valid, the court is constrained to hold that Mr. Vining simply forgot a brief occasion, unimportant to him, which had occurred more than a year previously. From a careful analysis of all the evidence we find, as did the learned trial judge, that the will was prepared, confected and executed under the direction of the testatrix, Mrs. Branch; that the will was read by the Notary, Mr. Carter, to the testatrix and the two witnesses in the presence of the other parties, with Mrs. Branch signifying that the document was her last will and testament; that Mrs. Branch signed the will and the two witnesses and the notary then signed the will in their respective capacities, and this was accomplished in the presence of all parties. Hence, the conclusion we expressed and reached in the immediately preceding paragraph.
The only medical evidence relied upon by the plaintiffs to indicate the unsound mental condition of the testatrix, due to degenerative arteriosclerosis, is that of Dr. S. W. Tuthill, who gave a narrative account by letter of the conditions for which he had treated the testatrix from 1958 until 1961. The physician described her medical history from the time he first saw her when she was 64 years of age and was suffering from congestive heart failure and high blood pressure. He described her condition upon the occasion of several office visits during the years 1958-1961 in which she continued to have a complete heart block. The last time Dr. Tuthill saw the testatrix professionally was in October of 1961, when she was suffering from an acute respiratory infection. His report made no note of an unsound mental condition, which would suggest that she appeared perfectly normal to him on this score. Dr. Tuthill did not see the testatrix between 1961 and her death in 1969, more than eight years later. There is no other medical evidence in the record.
Under these circumstances plaintiffs must perforce rely upon lay testimony with respect to the alleged unsound mental condition of the testatrix, and this evidence mainly of lay witnesses, who testified to some forgetfulness, quick changes in topics of conversation, and particularly that the testatrix had told several persons that she had made no will, among them the man who mowed her yard, when in fact she had made wills in 1961 and 1969. Some of these witnesses testified Mrs. Branch had told them she had willed or planned to will her property to her family, the Schillings. Far from indicating an unsound mental condition, the testimony of these witnesses actually suggests Mrs. Branch had a normal memory for her age, and probably did not wish to divulge her business affairs. As alluded to, supra, she did discuss the matter of her will clearly and understandably with Robert L. Branch, her husband’s nephew, who, it later developed, was the person most concerned with the testament. At the same time she denied to some persons having made a will, by the testimony of plaintiff-appellants’ own witnesses it is indicated she attended church regularly, sang in the choir, kept house, managed her business affairs well, and fully understood the legal proceedings connected with the probate of her husband’s will in 1968. Even in the case where she told a witness, *477 Carlos Singly (TR. 15-16), that she had not made a will, his testimony indicated that the testatrix had a full understanding of the nature of a will. Several disinterested defense witnesses, friends and neighbors of Mrs. Branch, testified to her normality in every respect and to her ability to take care of herself and her affairs. Although Mrs. Branch was in her early seventies when the will was confected and executed, the law is clear that age alone cannot be considered as a factor in determining the mental incapacity and testamentary incapacity of the person who makes a testament. See Landry v. Landry, 196 La. 490, 199 So. 401 (1940).
In this vein the court considers perhaps the most important testimony is that of Haley M. Carter, Notary, who observed that Mrs. Branch exhibited full mental capacity when the will was made. This is the most crucial time when determining the testamentary capacity of the testatrix. See Cormier v. Meyers, 223 La. 259, 65 So.2d 345 (1953) and Succession of Turner, 157 So.2d 740 (La.App., 2d Cir. 1963). Mrs. Myrtis Branch,,also testified to the normal mental capacity of the testatrix at the time of testation (Tr. 126). There is no evidence in the record of a lack of mental capacity of the testatrix at any time on the part of Mrs. Branch, which would necessitate the determination of her lucidity at the time of testation. Testamentary capacity is always presumed.
There is no proof worthy of note that Mrs. Branch lacked testamentary capacity, and plaintiffs have utterly failed to shoulder the burden of proving any lack of dis-positive ability on the part of the testator at the time the will was confected. See Succession of Holland, 236 La. 8, 106 So.2d 697 (1958); and Succession of Guidry, 160 So.2d 759 (La.App. 2d Cir. 1964).
With respect to plaintiffs’ claim that undue influence was used on Mrs. Branch to prevail upon her to make and have prepared the questioned testament, it is well settled that the only undue influence which will be admitted to nullify a will is that present at the time of making the will. See Texada v. Spence, 166 La. 1020, 118 So. 120, 62 A.L.R. 281 (1928); Succession of Herson, 127 So.2d 61 (La.App. 1st Cir. 1961), which cases hold “Hatred, anger, suggestion or captation” are not admissible in evidence. C.C.Art. 1492.
The universal legatee, Robert Branch, was not present when the will was made, nor did he even know about it until after it was made (Tr. 111-113). Mr. Branch denied he exercised any undue influence upon his aunt by marriage, the testatrix, but acknowledged she had asked him to accept her estate, and he had finally agreed when persuaded that it was the desire of his uncle, whose previous holdings constituted the bulk of Mrs. Branch’s property, that he be her ultimate legatee (Tr. 113). Mrs. Branch, Robert’s mother, who accompanied the testatrix to the attorney’s office, testified she took Mrs. Ouida Branch, her sister-in-law, to the office, because she called and requested that she do so (Tr. 126). She testified to the lack of any duress at the time the will was prepared and made (Tr. 126). In fact there is no evidence in the record whatsoever of any undue influence being exercised upon the testatrix at the time in question or at any other time.
For the reasons assigned the judgment of the trial court will be affirmed at the costs of the plaintiff-appellants.
Affirmed.