REGAN, Judge.
Plaintiff, Mercedes Carter Baptiste, instituted this proceeding to probate a nun-cupative will by public act, executed by the decedent, Mrs. Lorenza Doming Butler,[1] on September 3, 1952, wherein plaintiff was named testamentary executrix and universal legatee, and also, to have declared as null and void a statutory will, executed April 1, 1955. Plaintiff asserted that the last will was a nullity since the formalities prescribed by LSA-R.S. 9:2442 were not complied with, and also that the testatrix was precluded from executing a statutory will because she could not read. Plaintiff designated Evelyn Doming Thomas as the defendant herein, in view of the fact that she would be entitled to inherit decedent’s, entire estate if the last or the 1955 will was admitted to probate.
The defendant answered and insisted that the statutory will was valid and, therefore, requested that it be probated.
From a judgment in favor of the defendant maintaining the validity of the statutory will, the plaintiff has prosecuted this appeal.
The above will, which forms the subject matter of this litigation, contained only one provision, and that was to the effect that the decedent revoked all prior wills, particularly the testament executed in 1952 under which plaintiff herein is endeavoring to inherit the estate. The litigants concede that if tire statutory will is admitted to probate, then the succession of Lorenza Doming Butler, who died in the month of April 1960, should be treated as an intestate succession and the defendant should be recognized as her sole heir in conformity with the law of Louisiana regulating intestate successions.
The disputed will was executed before Margaret Gaudin, a Notary Public, which, after reciting the usual notarial formalities, reads in part:
“ * * * Mrs. Lorenza Domingue * * * did not know how to writ her name for the reason that she has never learned to write, and makes her cross-mark instead of her signature.
* sjs * * j}e
“My name is Mrs. Lorenza Domin-gue, I revoke all wills and codicils *241 here-tofore made by me, particularly the will dated September 3, 1952.
“It was thus that said last will and testament was dictated to me, Notary, by said Mrs. Lorenza Domingue, in the presence and hearing of said witnesses and written down by me, Notary, in the presence of said witnesses and said-testatrix. I, Notary, then read said last will and testament to said testatrix in a clear and audible voice, in the presence and hearing of said testatrix and said witnesses, when said testatrix declared that she persisted in the same —all of which was done at one and the same time, without interruption and without turning aside to other acts.
“In faith whereof, said testatrix has affixed her cross-mark, and said witnesses and I, Notary, have each subscribed our names, in the presence of each other and of said testatrix, on the day and in the month and year herein first above written, and at the time of taking such last will and testament.
her
“Mrs. Lorenza x Domingue mark
“/s/ Mrs. Mamie J. Spain
“/s/ Miss Marie Williams
“/s/ Margaret Gaudin
Notary Public
Plaintiff initially contends that the foregoing testament is invalid because the testatrix did not know how to read, and in support thereof points to LSA-R.S. 9:2443 which provides:
“Those who know not how or are not able to read, cannot make dispositions in the form of the will provided for in R.S. 9:2442.”
The record reflects that two witnesses, both of whom were related to the plaintiff, appeared on her behalf and testified that Mrs. Doming was unable to read. The first was Alice Carter Woods, plaintiff’s sister, who said she became aware of decedent’s inability to read during visits to her home when she was a child. She explained that she visited the decedent’s home after school and remained there until her mother, who worked, called for her. On these occasions the decedent requested her to print grocery lists, and to- check the names appearing on the envelopes of incoming mail in order to inform her who was the sender thereof. Her testimony, however, fails to reveal who opened and read the contents of the letters.
Plaintiff’s mother, Alice Bernard Carter, also testified that the decedent could not read. This assertion was based on the fact that the witness read to the decedent directions which appeared on the labels of prescribed medicines when she was a guest in her home many years prior to her death.
Plaintiff, in a laborious endeavor to substantiate the testimony of both her mother and of her sister, recounted that she also read to the decedent the directions which appeared on the labels of prescribed medicines when she visited her one day each week. In addition, she recited having called to decedent’s attention the fact that an insurance policy was issued in the name of Lorenza Victor, instead of Lorenza Doming. Apparently Victor was the family name of Mrs. Doming’s one-time “common-law husband”.
The defendant produced two disinterested witnesses, who conversely insisted that the decedent could read. The first was Edward Jones, who had assisted Mrs. Doming in the construction of her home. He related that she acted as the general contractor for the job, read and approved invoices, handled the money and paid the bills. He also recalled observing her read a newspaper.
The next witness who appeared on behalf of the defendant was Mamie J. Spain, a friend of Mrs. Doming who had witnessed the 1955 will at the request of Mrs. Doming. She stated that Lorenza Doming had read the Bible with her on one occasion.
*242 The defendant testified that the decedent had attended school in Napoleonville long enough to enable her to both read and write.
Predicated on the foregoing testimony, we, like the trial court, conclude that the evidence preponderates to the effect that the decedent was able to read since two disinterested witnesses said so and, in addition thereto, the whole tenor of the record establishes that she conducted her own business affairs in quite a competent manner which to some extent tends to confirm her ability to read.
On the other hand, the negative testimony adduced on behalf of the plaintiff, through the medium of two witnesses who were related to her, and who were obviously interested in the result of this litigation, does not establish, with that certainty required by law, her inability to read. In the Succession of Thibodeaux,[2] wherein a statutory will was attacked on the ground that the testatrix could not read, in evaluating the opponents’ testimony the organ for the court rationalized thus:
“Most of the testimony of appellees (opponents) is negative. It is not at all conclusive. It is not incontrovertible and of the type from which only one conclusion can be drawn, namely, that Mrs. Thibodeaux could not read. * * ” (Parentheses added)
It is significant to point out that in the Thibodeaux case, as in this case, some of the evidence adduced to establish that the testatrix was unable to read was the fact that someone read to the testatrix the directions which appeared on the label attached to a bottle of medicine which had been prescribed for her.
Plaintiff secondly contends that the will is invalid because the testatrix’s signature is not affixed thereto but instead her mark, an “X”, appears thereon.
The testament does recite that the plaintiff makes her mark because she is unable to sign her name; obviously we must conclude that the testatrix was unable to write since no evidence was offered to prove that the decedent was able to do so.
Therefore, the question of whether a testator must be able to write his or her name in order to execute a valid statutory will is now posed for our consideration.
Revised Statute designated as 9:2442 provides that:
“In addition to the methods provided in the Louisiana Civil Code, a will shall be valid if in writing (whether typewritten, printed, mimeographed, or written in any other manner), and signed by the testator in the presence of a notary public and two witnesses in the following manner:
“(1) Testator. In the presence of the notary and both witnesses the testator shall signify to them that the instrument is his will and shall sign each separate sheet of the instrument.
“(2) Notary public and witnesses. The notary and both witnesses must sign at the end of the will
“(a) In the presence of the testator, and
“(b) In the presence of each other.
“(3) The foregoing facts shall be evidenced in writing above the signatures of the notary public and witnesses and the testator at the end of the will. Such declaration may be in the following form or a form substantially similar thereto:
“(a) Signed (on each page) and declared by testator above named, in our presence to be his last will and testament, and in the presence of the testator and each other we have hereunto subscribed our names on this - day of-19-
*243 We are of the opinion that the words “signed” and “signature” appearing in this statute do not mean that a testator must literally write his or her name. An “X” mark, properly witnessed, fulfills the requirement thereof in this respect. This interpretation is substantiated by virtue of the following provision of LSA-R.S. 9:2443, entitled “Qualifications of testator”, which simply stipulates that the testator must know how to read. Had the legislature intended to require the testator to affix a signature to the will by actually writing his name, we think that LSA-R.S. 9:2443 would have spelled out this requisite without the slightest equivocation.[3]
Plaintiff finally contends that the instrument is invalid because the testatrix affixed her mark only after the attestation clause contained therein, and not after the dispositive portion of the will. The will in its entirety is set forth on one legal size page; therefore, we find no merit in this contention.
In the Succession of Eck,[4] the organ for the court, in discussing the signature requirements of the statute remarked:
“ * * * So long as all dispositive portions of the will are above all signatures and the attestation clause, and all signatures are below the attestation clauses, and the signature of the testator is above all other signatures, indicating that the testator signed first, the will is valid.”
The statutory will, the validity of which forms the subject matter of this litigation, fulfills these requisites and therefore, we are of the opinion that it is valid.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. In her last or the statutory will, her name appears as Mrs. Lorenza Domingue.

. 238 La. 791, 116 So.2d 525 (1959).

. In 28 T.L.R. at page 289, in discussing the statutory will, the writer points out:
“It is significant to note that the bill covering the new form of will which was submitted to the Louisiana legislature by the Louisiana Bar Association in 1952 contained the following provision in Section 2.
“ ‘Those who know not how or are not able to read, and those who know not how or are not able to sign their names, cannot make dispositions in the form of the will herein provided for, nor he attesting witnesses thereto.’ (Italics added).
The fact that the above italicized clauses-were deleted by the Louisiana legislature before the bill was enacted into law seems to indicate a liberal attitude on the part, of the legislature regarding the signature of the testator and of the attesting witnesses.”

. 233 La. 764, 98 So.2d 181 (1957). See also Succession of Nourse, 234 La. 691, 101 So.2d 204 (1958).