HOOD, Judge.
This is an action to annul the last will and testament of William Anderson, deceased. The suit was instituted by all of the surviving brothers and sisters of the decedent, and by the only child of a predeceased sister. The defendants are Nettie Augustus, who was named in the will as the universal legatee of the testator, and the six children of said universal legatee. Nettie Augustus is the widow of a predeceased brother of the testator, and her children are the issue of her marriage to that brother. After trial on the merits judgment was rendered by the trial court in favor of defendants, rejecting plaintiffs’ demands, and decreeing- the will to be valid. Plaintiffs have appealed.
The contested will purports to have been executed by the testator on October 17, 1959, before a notary public and two witnesses, in the form and manner set out in LSA-R.S. 9:2442 et seq. The testator died on August 24, 1962, and the will was probated on November 30, 1962. This suit attacking the validity of the will was instituted within three months of the date the testament was probated, so the defendants have the burden of proving the authenticity of the testament and its compliance with all of the formal requirements of the law. LSA-C.C.P. Article 2932.
Plaintiffs contend primarily that the will is null and void because it was not signed by the testator in compliance with the provisions of LSA-R.S. 9:2442.
The testament is typewritten on one side of a sheet of paper. It contains the following declaration:
“I declare that I do not know how to sign my name and that I sign this my last will and testament by affixing my mark thereto with the assistance of the undersigned Notary Public.”
The signatures of the notary public and of the two subscribing witnesses appear at the bottom of the will, and no question is raised as to their signatures. The testator, however, did not write his name on the document, but instead he signed it by placing his “X” mark on it. The evidence shows that at the time the will was completed the notary public wrote the name of the testator on that document at the place where the testator should sign. He then indicated to the testator where the latter was to- place his “X” mark, he gripped the testator’s hand and brought or guided the hand to the proper place, and he then relaxed his grip but allowed his hand to rest on top of the testator’s hand as the latter made an “X” mark on the will. The evidence establishes that the testator himself actually affixed his “X” mark to the will, although he did receive assistance from the notary, as above set out. He did not know how to sign his name at the time the will was executed. There are no allegations of fraud, and there is no contention that the testator was forced to affix his mark to the instrument against his wishes.
In our opinion it is not sacramental to the validity of a will, which otherwise is executed in the form and manner provided in LSA-R.S. 9:2442 et seq., that the testator literally write his name on that document. We think an “X” mark placed on the will by the testator, with the intent that the affixing of that mark constitutes a signing of the will, fulfills the requirement that the will be signed by the testator. This is particularly true in a case such as this where the testator does not know how or is not able to sign his name. See Succession of Butler, La.App. 4 Cir., 152 So.2d 239 (Cert denied); 28 Tul.L.Rev. 288; and 37 Tul.L.Rev. 857.
We agree with the trial judge, therefore, that the will being contested in the instant suit was signed by the testator, *778 although he merely placed an “X” mark adjacent to his name on that document. We think it is immaterial to the validity of the will that the notary assisted the testator in making the “X” mark by grasping his hand, guiding it to the proper place on the document, and then allowing his hand to rest on top of the testator’s hand while the mark was being affixed. See Succession of Butler, supra.
Plaintiffs contend further that the will is void because the testator did not know how to read at the time the will was executed. As pointed out by plaintiffs, the law specifically provides that “Those who know not how or are not able to read, cannot make ■dispositions in the form of a will provided .for in R.S. 9:2442.” See LSA-R.S. 9:2443.
The evidence is conflicting as to whether the testator in the instant suit was able to read at the time the will was executed. He was 88 years of age at that time, and there is no question but that he had had very little, if any, formal schooling. Three of the five plaintiffs in the suit, and three children of another plaintiff, testified that he could not read. They based these statements to that effect on the fact that they had never seen the testator read anything and that on many occasions he had asked them- or others to read to him the mail which he received and to read his utility, tax and other bills. Martin Begnaud, a banker with whom the testator had done business, also was of the opinion that he could not read. He testified that he would have to tell the testator the amount of the Welfare checks which the latter cashed at the bank.
All of the defendants, on the other hand, testified that the testator could read. They stated that when they lived in the testator’s home at one time he used to read to them from the Bible, he led them in singing from a Hymn book, read them passages from a religious magazine, read from school books wb'ile' assisting them in memorizing their school- lessons, helped them with their spelling lessons, and from time to time ordered certain drugs and cosmetics by filling out and mailing written order blanks. Their testimony is supported by that of Irma B. Barabin, a retired school teacher who roomed and boarded in the testator’s home for about nine months during the 1920’s. She stated that the testator knew how to read at about a second grade level when she began living in his home, that while there she taught him how to read better, and that as a result of her tutoring he was able to read at about a third grade level by the time she moved from the home. She stated that the testator could not write or sign his name, but in her teaching experience she knew of several instances where persons who were able to read could not write.
The notary before whom the will was executed, he being also the attorney for the defendants herein, testified that in the presence of the witnesses to the will he asked the decedent if he knew how to read and that the decedent replied that he could read, but that he could not write or sign his name. Prior to signing the will the decedent appeared to read the will to himself in a very slow and deliberate manner.
In Succession of Thibodeaux, 238 La. 791, 116 So.2d 525, as in the instant case, the evidence was conflicting as to whether the testatrix was able to read at the time she purportedly executed a statutory will. The trial court concluded that she was not able to read at that time, and judgment was rendered annulling the statutory will. On appeal, our Supreme Court reversed the decision of the trial court and held that the testatrix was able to read, and that the will executed by her in the form and manner provided by LSA-R.S. 9:2442 was valid. In so holding the court said that “The policy of our law is to maintain the validity of a will, if possible,” and that “If possible, a will should be read so as to lead to a testacy, not to an intestacy.”
In the instant suit the trial -judge concluded that “the preponderance of the testimony -is that the decedent knew how *779 and was able to read.” We think the evidence supports that conclusion, and accordingly we find, as did the trial judge, that the testator was able to read at the time the will in contest here was executed.
Plaintiffs contend finally that the testator was mentally incompetent and incapable of making a last will and testament at the time he is alleged to have made the will in contest here. The evidence as to the mental competency of the testator on October 17, 1959, also is conflicting. Some of the plaintiffs and other witnesses called by them testified that the decedent suffered a “stroke” in the middle or latter part of 1959, that thereafter he had the mind of a child four or five years of age, that his mind wandered during conversation, and that he constantly talked about persons who had been dead some thirty years or more. Some of these witnesses testified that during the last four years of his life the testator would “talk out of his head” if he failed to take certain pills prescribed for him by his physician. One of such witnesses stated, however, that he saw to it that the testator took his pills every day from the time he supposedly suffered a stroke until the time of his death. Defendant, Nettie Augustus, on the other hand, testified that there was no change in the testator’s mental condition until the year 1962, which was at least two or three years after the will was executed. She stated that during the last few months of his life he at times would not know where he was, but that “when you talked to him a while, he would come to himself.”
Dr. L. A. Morrough, who treated the decedent during the last thirteen years of his life, testified that he did not suffer a “stroke” in 1959 or at any other time, that he did suffer from a heart and kidney ailment for which medicines had been prescribed, and that it was necessary for him to take these medicines during the last ten years of his life. He stated that the decedent’s failure to take these medicines for a period of a week or two would cause him to develop a toxic condition and cause his mind to become “cloudy,” but that he would return to normal upon resuming his medicines. He stated that in his opinion the testator was mentally competent until less than six months, before his death, and that during the year 1959 when his mind was “clear” there was no doubt that he was mentally competent to execute a will.
The notary (and attorney) before whom the will was executed testified that he had had numerous business dealings with the decedent from 1951 until 1959, and that at no time had he felt that the decedent failed to understand the matters which were being discussed. At the time the will was made the notary had no doubt but that the testator was mentally competent and that he understood all that was being done.
The trial judge concluded that the “testator was mentally competent” when this will was completed on October 17, 1959, and in our opinion the evidence supports that conclusion.
Since the testator signed the will, and was able to read and was mentally competent at the time the will was executed, we think the trial judge correctly held that the testament was executed in the form and manner provided by LSA-R.S. 9:2442, and that the will is valid.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiffs-appellants.
Affirmed.