REGAN, Judge.
This is an appeal from a suit which sought to nullify a testament and codicil thereto, both of which were executed under the statutory will form provided for in R.S. 9:2442. Following an extended trial on the merits, judgment was rendered in the lower court maintaining the validity of the original testament and declaring the codicil thereto a nullity.
The record discloses that on June 10, 1963, the testator, Joseph Broussard, executed his will wherein he divided his estate among various legatees named therein. Subsequently, on February 23, 1965, he executed a codicil to the original will, in which he reduced the legacy of one of the legatees from $20,000.00 to $5,000.00.
The testator died on February 5, 1966, and thereafter, the will and the codicil were probated.
On July 6, 1966, more than three months from the date of the probate, various collateral relations of Broussard filed a petition to have both the original will and the codicil declared null on the theory that the testator was unable to read at the time that the wills were confected. Answers of denial were filed by several of the legatees. The legatee whose legacy was reduced in the codicil, Robert E. Butler, answered and then filed a third party petition in which he defended the original will but attacked the validity of the codicil on the hypothesis that the decedent could neither read nor sign his name on the date of its confection.
When all the evidence had been adduced herein, the original plaintiffs amended their petition to attack both documents on the additional theory that they were not executed in conformity with the requirements of R.S. 9:2442.
The lower court rendered a judgment maintaining the validity of the original will, finding as a matter of fact that the testator could see and read printed matter and that he was not an illiterate, but had acquired an adequate education so that he could read within the contemplation of the statutory provision. However, the lower court annulled the codicil thereto, on the theory that the decedent could not sign his name without assistance because his hand had to be steadied by the notary when the will was made.
The original plaintiffs appealed from that portion of the judgment upholding the original will, and several of the legatees appealed from that portion of the judgment declaring the codicil thereto invalid.
The first issue posed for our consideration is whether the will and codicil thereto were drawn and executed in conformity with the requirements of R.S. 9:2442. An examination of the testament under attack revealed that it is typewritten, and contains various legacies which need not be discussed in detail. At the end of the disposi-tive provisions, there is an attestation clause similar to that required by the above mentioned statute, and after this clause, the testator affixed his signature. Immediately thereafter, there is a separate attestation clause drawn in accordance with the statute, after which follow the testator’s signature, the signatures of two witnesses, and the signature of the notary.
The plaintiffs’ attack on the form of the will may be briefly summarized. In short, they contend that the separate attestation clause at the end of the will under the testator’s signature renders the testament invalid, since the testator could have affixed his signature to the original will, and thereafter the attestation clause, together with the signature of the testator, the witnesses, and the notary could have been added at a *591 later time. They contend that the only valid will is one in which the statutory attestation clause is contained in the body of the testament before the signature of the testator, and that the will as thus drawn must then be signed by the testator, the witnesses, and the notary.
Before its amendment in 1964, R.S. 9:-2442 read as follows:
“In addition to the methods provided in the Louisiana Civil Code, a will shall be valid if in writing (whether typewritten, printed, mimeographed, or written in any other manner), and signed by the testator in the presence of a Notary Public and two witnesses in the following manner:
“(a) Testator. In the presence of the Notary and both witnesses the testator shall signify to them that the instrument is his will and shall sign each separate sheet of the instrument.
“(b) Notary Public and Witnesses. The Notary and both witnesses must sign at the end of the will
(1) In the presence of the testator, and
“(2) In the presence of each other.
“(c) The foregoing facts shall be evidenced in writing above the signatures of the Notary Public and witnesses and the testator at the end of the will. Such declaration may be in the following form or a form substantially similar thereto :
(1) Signed (on each page) and declared by testator above named, in our presence to be his last will and testament, and in the presence of the testator and each other we have hereunto subscribed our names on this - day of _19_”
We hasten to point out that no evidence was adduced to reveal that the attestation clause was added at any time subsequent to the confection of the body of the original testament. Moreover, an argument similar to that asserted by the plaintiffs herein was disposed of in Succession of Eck.[1] In that case, a statutory testament contained two attestation clauses. Immediately at the end of the dispositive portion of the will there appeared a paragraph similar to the concluding paragraph in the will here contested. In the Eck case, the testator thereafter placed his signature. Following the signature, there appeared an additional paragraph conforming to the suggested statutory attestation clause, and immediately after this clause followed the signature of the witnesses and the notary public, without the signature of the testator.
Under these facts, the organ for the Supreme Court upheld the validity of the will, and in so doing rationalized as follows :
“ * * * So long as all dispositive portions of the will are above all signatures and the attestation clause, and all signatures are below the attestation clauses, and the signature of the testator is above all other signatures, indicating that the testator signed first, the will is valid.”
In this case, the form of the testament and codicil is almost identical to that in the Eck case, with the exception that the testator signed again together with the notary and the witnesses after the final attestation clause. After an analysis of the will and codicil in dispute, the statute in question and the Eck case, the conclusion is inescapable that this will and codicil conform even more closely to the statutory requirements than the testament held valid in the Eck case. Therefore, the original testament is valid insofar as its form is concerned.
The second issue posed for our consideration is whether or not Joseph Broussard possessed testamentary capacity to execute the will and the codicil at the time of their confection. The plaintiffs insist that the *592 testator did not know how to read and, in the alternative, if he knew how to read, he was not able to read when the will and codicil were confected.
As might be expected, the testimony elicited concerning the ability of the testator to read is somewhat in conflict. However, there is convincing evidence in the -record that the testator knew how to read, and did in fact read aloud before several persons. Mrs. Antoinette Heslin, the testamentary executrix, testified emphatically that she heard Broussard read aloud during the time that she knew him. Dr. William Clark, an opthalmologist who had performed a cataract operation on him, stated that in the course of examining his eyes Broussard was required to read an eye chart. During the course of this test, he read the words occur, nevermore, successor, romance, and warn. Moreover, Frank Reyes, a close friend of Broussard, testified that on several occasions he saw him read from a racing form at the racetrack and read from a menu at various supper clubs. Finally, the two witnesses to the will and to the codicil testified that they saw the testator read his will before signing it.
Numerous other persons testified regarding Broussard’s knowledge of reading, and evidence was adduced to establish as a fact that a Joe Broussard attended Soule Business College in 1914, and the address listed with the business school coincides with the address of the only Joseph Broussard in the City of New Orleans at that time.
The plaintiffs also argue that the testator was not able to’ read since he had lost his visual acuity and because he had lost the powers of comprehension, orientation, and concentration. Insofar as his loss of visual acuity is concerned, Dr. Clark, to reiterate, the opthalmologist who performed cataract surgery on him, testified that with the aid of prescription glasses, in May, 1962, he found that Broussard’s eyes were very near normal, and that he had 20-20 vision for distance and could read a Jaeger No. 1 print in close proximity. In addition thereto, the plaintiffs’ own handwriting witness related that the signatures on the wills were not signatures of a blind man. Insofar as the testator’s ability to comprehend is concerned, the record discloses that the plaintiffs offered the testimony of Dr. Ritter, a psychiatrist, who predicated his opinion solely on the hospital records which were introduced into evidence. He concluded therefrom that these records show intermittent periods of disorientation suffered by Broussard during his hospitalization. However, his opinion is not based on any physical or mental examination of the testator, but simply on notations made by persons who were present in the hospital when he was ill. Moreover, the physicians who actually treated Broussard, Dr. John E. Garcia, Dr. Louis Monte, and Dr. Frank Boyce, all testified and concluded that he was rational, and was able to confect a will.
The foregoing elucidation reveals that the questions of the testator’s knowledge of reading, and his ability to see and comprehend at the time of the execution of the testament and the codicil were questions of fact posed for the trial court’s consideration. The judge thereof obviously accepted the defendants’ version of the evidence and, therefore, concluded that Joseph Broussard possessed the testamentary capacity to execute the original will and the codicil thereto.
The question which this appeal has posed for our consideration is whether that finding of the trial judge is so erroneous and unsupported by the evidence as to warrant a reversal by us.
We are of the opinion that no useful purpose would be served by indulging in a protracted discussion of the foregoing testimony or by endeavoring to reconcile the respective litigants’ versions of the mental and physical abilities of the testator. The trial judge accepted the defendants’ version thereof, and our analysis of the record convinces us that the evidence preponderates in their favor and the judgment, to this extent, is correct.
*593 However, the judgment of the lower court annulling the codicil poses both a mixed question of law and of fact for our consideration.
In 1964, after the original will was written and before the confection of the codicil thereto, R.S. 9:2442 was amended so that it presently reads:
“ * * * (1) In the presence of the notary and both witnesses the testator shall signify to them that the instrument is his will and shall sign his name on each separate sheet of the instrument. If, however, the testator declares that he is not able to sign his name because of some physical infirmity, express mention of his declaration and of the cause that hinders him from signing his name must be made in the act, and he shall then affix-his mark on each separate sheet of the instrument.”
In his reasons for judgment, the lower court concluded that at the time of the execution of the codicil, that is, on February 23, 1965, the testator had incurred a physical infirmity and could not sign his name. He also concluded that Broussard’s hand was steadied by the notary in order for him to affix his signature to the codicil, which rendered it invalid by virtue of the amendment to the statute, which provides that mention of the disability must be made in the will.
The evidence adduced to support the trial court’s conclusion that the testator’s hand was steadied consists of the deposition of the notary who confected the codicil and the testimony of the two witnesses thereto. An analysis of the notary’s deposition leads to the inevitable conclusion that he did not remember whether or not the testator’s hand had to be steadied on this occasion. His testimony was to the effect that he attended the signing of several documents for Broussard, and he was not sure whether or not on this occasion the testator’s hand was steadied. In short, his testimony discloses that he simply did not remember.
On the contrary, the two witnesses who attended the confection of the will stated unequivocally that the testator’s hand was not steadied by the notary on this occasion, and no contrary evidence exists in the record. It should be recalled at this point that under the Louisiana Code of Civil Procedure Article 2932, the burden of proof rests upon one who seeks to annul a probated testament if the action of nullity was instituted three months after the date of probate. In this case, there is little evidence, other than the equivocal testimony of the notary who actually did not remember, to substantiate the fact that the testator’s hand was steadied. Moreover, the three handwriting experts who testified in the proceeding concluded that the signature of the testator was his normal and unaided signature.
However, assuming arguendo that we accept the trial court’s finding of fact, his conclusion as to the law applicable thereto does not coincide with our interpretation thereof. It concluded that since the testator could not sign his name due to a physical infirmity, the codicil did not meet the requirement of the statute which necessitates the express mention in the will of the testator’s infirmity which prevented him from signing his name.
However, an analysis of that portion of the statute relied upon by the lower court to invalidate the codicil reveals that it does not apply to the facts developed in this case. The section relied on by the judge thereof reads:
“ * * * If, however, the testator declares that he is not able to sign his name because of some physical infirmity, express mention of his declaration and of the cause that hinders him from signing his name must be made in the act, and he shall then affix his mark on each separate sheet of the instrument.”
In this case, there is no evidence of the testator’s declaration that he was not able to sign his name because of some *594 physical infirmity. Therefore, no express declaration thereof could properly be made in the will: Moreover, even assuming that the testator’s hand was steadied by the notary, it is well settled that such assistance does not render a statutory will invalid.[2] Even though this conclusion was reached by the courts prior to the amendment quoted above, the very words forming the context of the amendment make it quite obvious that it was never intended to apply to situations in which the testator’s hand was merely steadied. To the contrary, the words thereof convey the conviction that it was drawn to apply in situations in which the testator’s physical infirmity was of such a degree as to render him unable to sign his name in any fashion, so that he could only make his “mark” on each page of the instrument and at the end thereof. Thus, where the testator maintains his ability to sign, and his signature is merely unsteady, the amendment has no application. Consequently, even if the notary had steadied the testator’s hand, no express declaration of this fact need have been made in the codicil, and the absence thereof does not render it invalid.
For the foregoing reasons, the judgment of the lower court is affirmed insofar as it maintains the validity of the original testament of June 10, 1963. However, insofar as the lower court’s judgment annulled the codicil of February 23, 1965, it is reversed and set aside, and judgment is now rendered dismissing the third party complaint of Robert Butler which attacked the validity of the codicil.
The matter is now remanded for such additional proceedings as the nature of this succession may require which shall not be inconsistent with the views expressed herein.
All costs herein are to be borne by the opponents to the will and the codicil.
Affirmed in part, reversed in part, remanded.

. 233 La. 764, 98 So.2d 181 (1957).

. See Succession of Guidry, La.App., 160 So.2d 759 (1964); Succession of Barrieu, La.App., 148 So.2d 836, 98 A.L.R. 2d 820 (1963); Succession of Anderson, La.App., 159 So.2d 776 (1964).