509 So.2d 844 (1987)
In the Matter of the SUCCESSION OF Mary Brocato SULLIVAN.
No. CA 86 0891.
Court of Appeal of Louisiana, First Circuit.
June 23, 1987.
*845 Stuart R. Thomson, Baton Rouge, for plaintiff-appellee, Homer Lee Sullivan.
William Coxe, Jr., Baton Rouge, Quentin F. Urquhart, Jr., New Orleans, for defendant-appellant, Angie Brocato Palmentier and Lucy Brocato.
Before SAVOIE, CRAIN and LeBLANC, JJ.
CRAIN, Judge.
This is an appeal from a judgment finding the testatrix to have the testamentary capacity to execute a statutory will and upholding the validity of that will.
Mary Brocato Sullivan had the misfortune to contract cancer of the brain, from which she eventually died. She remained in the hospital from December, 1982, until she died in early March of 1983. On February 21, 1983, she signed a statutory will prepared by an attorney who was retained by her husband, leaving all of her property to him. The will named Mr. Sullivan's nieces and nephews as residuary legatees. No provision was made for either of Mrs. Sullivan's sisters, Mrs. Lucille Brocato Ranzio and Mrs. Angie Brocato Palmentier. Mrs. Sullivan's sisters contested the validity of the will and the testatrix's capacity to confect it.
The issues raised on appeal are whether the will complied with the procedural requirements of La.R.S. 9:2442 and La.C.C.P. art. 2887, and whether the testatrix possessed the requisite testamentary capacity.

COMPLIANCE WITH PROCEDURAL REQUIREMENTS
The will was drafted by Mr. William Nelson Coxe. Mr. Coxe was contacted by Mr. Sullivan to prepare mutual wills for the testatrix and himself. Mr. Coxe visited the testatrix in the hospital several times prior to drafting the instrument to assure that the will disposed of the testatrix's property in accordance with her wishes. Mr. Coxe, Nurse Emma Sanchez and Nurse Odell Hanchey witnessed the execution of the will. Mr. Sullivan was also present, but testified that he did not closely observe the proceedings. Mr. Coxe testified at trial that he observed the testatrix sign the will three times, once on the first page and on the second page after the dispositive portion, and after the attestation clause. Emma Sanchez testified that she saw the decedent sign the will only once, the signature below the attestation clause. Nurse Hanchey was not available at trial. The appellants argue that the procedural requirements of La.R.S. 9:2442 and La.C.C.P. 2886 have not been complied with, and since the action was brought within three months of the action of probate, the proponents of the will have the burden of proving the will's validity. La.C.C.P. art. 2932.
La.R.S. 9:2442(B) provides in part:

*846 The statutory will shall be prepared in writing and shall be dated and executed in the following manner:
(1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his last will and shall sign his name at the end of the will and on each other separate page of the instrument.
The procedural requirements for proving a statutory will are set forth in La.C.C.P. art. 2887 which provides in pertinent part:
A statutory will must be proved by the testimony of the notary and one of the subscribing witnesses or of two of these witnesses that it was signed by the testator. If only the notary or only one of these witnesses is living in the state and can be located his testimony that the testament was signed by the testator will be sufficient.
In Riedel v. Sharp, 386 So.2d 1066 (La. App. 3 Cir.1980) the court upheld the validity of a statutory will with only the notary's testimony that the testatrix signed in his presence. The witnesses in that case recognized their signature, but could not remember if the testatrix signed in their presence. The present case is stronger than Riedel since Nurse Sanchez does remember the testatrix signing the will once. As stated in Riedel 386 So.2d at 1067: "We find no merit to plaintiffs' argument that the witnesses to a will must have an independent recollection of all the facts surrounding the execution of the will." It would be a ridiculously high burden to expect the witnesses to have a complete and independent recollection of every event which occurred at the signing of the will. Succession of Caprito v. Mayhew, 478 So.2d 243 (La.App. 3 Cir.1985); Riedel, 386 So.2d at 1067.
While the proponents in this case have the burden of proving that the formalities have been followed, their task is eased by a presumption in favor of validity of testaments in general. Caprito, 478 So.2d at 246. Proof of non-observance of formalities must be exceptionally compelling in order to rebut the presumption of validity of testaments. Succession of Remont, 462 So.2d 224 (La.App. 1 Cir.1984).
The appellants do not allege that the testatrix did not sign the will or any other impropriety. Their argument is only that Nurse Sanchez did not see the testatrix sign the will more than once. However, Nurse Sanchez did testify that the testatrix was very weak and that she had difficulty in signing the will. Mr. Coxe testified that it took about twenty minutes to execute the will because of the testatrix's weakness.
We also note that the will contained an attestation clause drawn in compliance with La.R.S. 9:2442. Although attestation clauses are not self-proving for purposes of probate, their primary purpose is to evidence that the statutory formalities were satisfied at the time the will was executed. Succession of Remont, 462 So.2d at 226.
The trial judge held that the requirements of La.C.C.P. art. 2887 had been met by the testimony of the notary and witnesses in this case. We find no error in this holding.

TESTAMENTARY CAPACITY
The appellants contend that the testatrix lacked the testamentary capacity to execute the will.
To make a valid donation mortis causa, a person must be of sound mind. La.C.C. art. 1475. The testamentary capacity to make a will is tested at the time the will is made. La.C.C. art. 1472; Stewart v. Branch, 250 So.2d 474 (La.App. 1 Cir.), writ denied, 259 La. 905, 253 So.2d 224 (1971). The question is whether the testator understood the nature of the testamentary act and appreciated its effects. Succession of Lyons, 452 So.2d 1161 (La.1984). The burden of proving lack of testamentary capacity is upon the party alleging it. Lyons, 452 So.2d at 1164. There is a presumption in favor of testamentary capacity. This presumption continues until rebutted by clear and convincing evidence to the contrary. Lyons, 452 So.2d at 1166.
The appellants' allegations of incapacity are based on three grounds: 1) the testatrix *847 had forgotten how to sign her name when the will was executed; 2) the inability of the testatrix to read when the will was executed; 3) the soundness of the mind of the testatrix when the will was executed.
The appellants contend that the testatrix did not know how to sign her name when the will was executed. Mr. Coxe testified that the testatrix was very weak and had to be assisted in signing her name. This assistance consisted of bracing her elbow and holding his hand above her wrist to prevent shaking. It is settled law that assistance such as this does not render a will invalid. Succession of Broussard, 210 So.2d 589 (La.App. 4 Cir.), writ denied, 252 La. 837, 844, 214 So.2d 161, 164 (1968). Execution of the will took over twenty minutes because the testatrix had to stop and rest several times.
The gist of the appellants' argument is that, since the signatures on the will do not resemble the testatrix's normal signature, she no longer knew how to "sign her name" and therefore lacked the testamentary capacity to execute the will. The appellants contend that the ability to write one's name will not satisfy La.R.S. 9:2442 because the statute requires the "signature" of the testatrix and La.C.C.P. art. 2887 has a provision for proving a statutory will by identification of the testatrix's signature.
The appellants do not allege that the testatrix did not sign the will. Instead, their argument goes to the fact that only one of the three signatures resembles the testatrix's normal signature, whereas the other two signatures are almost illegible.
In Succession of Zinsel, 360 So.2d 587 (La.App. 4 Cir.), writ denied, 363 So.2d 72 (La.1978), the court upheld the validity of a will even though the signature was almost illegible and could not be compared to the testator's standard signature. The court felt that the signature was indicative of the testator's signature rather than abstract markings.
If the appellants' argument prevailed, those with serious illnesses or injuries would be prohibited from executing a valid statutory will unless their signatures corresponded with their normal signature. La.R.S. 9:2442 does not require a person's signature to remain constant for life. Although the testatrix's signature on the date of execution of the will did not resemble her signature from years past, it was, nonetheless, her signature on that day. We also note that La.C.C.P. art. 2887 only requires recognition of the testatrix's signature when the testament is proved by someone other than subscribing parties to the instrument. Succession of Staggers, 254 So.2d 289 (La.App. 4 Cir.1971).
The appellants contend that the signatures constitute mere "markings" and that the testatrix should have executed the will in accordance with La.R.S. 9:2442(A)(1) which has provisions for those with physical or mental infirmities which prevent them from "signing" the will. These provisions are to apply in situations in which the testator's physical infirmity is of such a degree that it renders him unable to sign his name in any fashion, so that he can only make his mark on the instrument. Where the testator maintains the ability to sign, and the signature is merely unsteady, 9:2442(A)(1) has no application. Broussard, 210 So.2d at 594; Zinsel, 360 So.2d at 591.
The appellants next allege that the testatrix was unable to read at the time of execution of the will. La.R.S. 9:2442 makes the ability to read an element of testamentary capacity in the execution of a statutory will. Succession of Comeaux, 428 So.2d 1081 (La.App. 1 Cir.1983). There was conflicting testimony regarding the testatrix's ability to read, whether she could read with the aid of glasses and whether she had her glasses on during the execution of the will.
Whether the testatrix could read at the time of the execution of the will is a question of fact to be determined by the trial court and its finding will not be disturbed on appeal in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We find no manifest error. This argument is without merit.
*848 Appellants contend that the testatrix was of unsound mind when the will was executed. Dr. Lloyd Perez, the testatrix's treating physician, testified that she had the capacity to execute the will. Dr. Perez is a general practitioner and was accepted as an expert. Dr. Alvin Rouchel, a psychiatrist, testified by deposition as to the lack of testamentary capacity. Dr. Rouchel had neither seen nor treated the testatrix and was testifying solely from the hospital records and test results. Dr. Perez's opinion was based on his own observations. The contrary opinion was not based on observation or proven facts, but on deduction. Under these circumstances greater weight must be given to the doctor who treated the testatrix. See Ryan v. State, 477 So.2d 110 (La.App. 1 Cir.), writ denied, 478 So.2d 136 (La.1985). In addition, testimony from the nurses and staff who cared for the testatrix corroborated Dr. Perez's opinion that the testatrix possessed the requisite capacity.
The trial judge found that Mrs. Sullivan possessed the requisite testamentary capacity at the time of executing the will and that the opponents had failed to carry their burden of showing a lack of capacity. Testamentary capacity is solely a question of fact to be determined by the trial court and its finding will not be disturbed on appeal in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Succession of Keel, 442 So.2d 691 (La.App. 1 Cir.1983). We find no manifest error. Accordingly, we affirm the judgment of the trial court. Costs of this appeal are assessed against the appellants.
AFFIRMED.