563 So.2d 1006 (1990)
SUCCESSION OF Mamie Foreman EASTERLY.
No. CA 89 0861.
Court of Appeal of Louisiana, First Circuit.
June 26, 1990.
Robert J. Carter, Greensburg, Robert L. Kleinpeter, Baton Rouge, for Vivian Brown Miscar, Jeanne Webb Wilhelm, J. Ernest Webb, Nettie B. Easterly, Mamie Easterly Milton, and L.G. Webb, plaintiffs.
Tom Matheny, Hammond, for defendant, William C. Blakely.
Paul H. Spath, Baton Rouge, for defendant, E. Lynn Singleton.
Before LOTTINGER, CRAIN and FOIL, JJ.
CRAIN, Judge.
This is an appeal of a judgment upholding the validity of a disposition in a will.

FACTS
Mamie Foreman Easterly died on December 30, 1984, at the age of 89. On October 26, 1984, while in the hospital for treatment of a fractured ankle, she executed a will distributing her estate. She left the residuary of her estate to Reverend William C. Blakely. The testatrix had a similar bequest in a 1979 will. The appellants, first cousins of the decedent are allegedly her intestate heirs, contested the validity of the will and disposition to Rev. Blakely.
The trial court found that Mamie Easterly possessed the requisite capacity to execute a will at the time of execution and that La.Civ.Code art. 1489 did not apply to the instant situation to prohibit Rev. Blakely from receiving a disposition under the will.
The issues for review are the capacity of Mamie Easterly to execute a will on October 26, 1984, and the application of La.Civ. Code art. 1489 to the residuary legacy to Rev. Blakely.

TESTAMENTARY CAPACITY
In Succession of Sullivan, 509 So.2d 844, 846 (La.App. 1st Cir.1987) this court stated:
To make a valid donation mortis causa, a person must be of sound mind. The testamentary capacity to make a will is tested at the time the will is made. The question is whether the testator understood the nature of the testamentary act and appreciated its effects. The burden of proving lack of capacity is upon the *1007 party alleging it. There is a presumption in favor of testamentary capacity. This presumption continues until rebutted by clear and convincing evidence to the contrary. (citations omitted)
The trial court found "no convincing proof that Mrs. Easterly was not completely sound of mind on the dates that both wills were made." We find no error.
Mamie Holmes, maid for the testatrix since the mid-1970's, testified that the testatrix had good and bad days. Mamie Holmes visited the testatrix during the October stay in the hospital. Her testimony indicated that the testatrix understood what was going on and that she wanted to leave the hospital. The appellant's evidence was largely based on testimony by Dr. Robert Belser, the testator's treating physician, and notes on the hospital record. This evidence indicated some confusion and combativeness on the part of the testatrix but did not indicate that the testatrix totally lacked the capacity to execute a will during her entire stay at the hospital in October, 1984.
The appellants have failed to prove a lack of capacity by the testatrix when she executed the October, 1984 will. This assignment lacks merit.

DISPOSITION TO A MINISTER
The appellants next argue that La. Civ.Code art. 1489 would prohibit Rev. Blakely from taking under the 1979 or October 1984 will.
La.Civ.Code art. 1489 states in part:
Doctors of physic or surgeons, who have professionally attended a person during the sickness of which he dies, can not receive any benefit from donations inter vivos or mortis causa made in their favor by the sick person during that sickness....
The same rules are observed with regard to ministers of religious worship.
The appellants argue that the testatrix was diagnosed as suffering from arteriosclerosis in 1974 or 1975. They argue that the eventual cause of death was arteriosclerosis and that Rev. Blakely was the testatrix's minister at the time she was first diagnosed. Therefore, he would be prohibited from receiving under either the 1979 will or the 1984 will. In reasons for judgment the trial court held that La.Civ. Code art. 1489 had no application in the present case. The trial court stated:
This court also finds that Dr. William Blakely was not Mrs. Easterly's minister after 1978. The only relationship that Dr. Blakely had with Mrs. Easterly after 1978, was that of a family friend. It was shown that on occasion Mrs. Easterly referred to Rev. Blakely as "Bill". Again, the testimony of Mamie Holmes is important, it confirms the relationship of Dr. Blakely and Mrs. Easterly as one of friendship.
After reviewing all of the evidence we find no error on the part of the trial court. There was evidence that Reverend Dr. Charles E. Scott was Mamie Easterly's minister and that she was a member of his church from 1978 until her death. In 1980 Rev. Blakely became a district supervisor and did not serve as a minister of any church from 1980-1986. There was evidence that Mamie Easterly spent weekends, holidays and vacations with the Blakely family. She referred to Rev. Blakely as "Bill". All of the evidence indicates that the relationship between Mamie Easterly and Rev. Blakely was that of friends. There is a lack of evidence indicating a minister-parishoner relationship during Mamie Easterly's last illness. See Succession of Mack, 535 So.2d 461 (La.App. 4th Cir.1988). We find that La.Civ.Code art. 1489 does not apply here.
In addition, we do not believe that La.Civ.Code art. 1489 should be read so broadly. If we were to accept the appellant's view it would have the practical effect of precluding a physician or minister from receiving a legacy once a long-term illness is diagnosed. It would not be reasonable to hold that Mamie Easterly could not give a legacy to her friend Rev. Blakely in 1984 because she was diagnosed as having arteriosclerosis in 1974 and he was her minister at that time. Id.; also see Coleman v. Winsey, 183 So.2d 118 (La.App. 1st *1008 Cir.1965), writ denied, 248 La. 1101, 184 So.2d 25 (1966). This assignment is without merit.
The judgment of the trial court is affirmed. All costs are assessed against the appellant.
AFFIRMED.